■ JANE PONTARELLI, Appellant, v SANFORD M. SHAPERO et al., Respondents. [647 NYS2d 185] —Order and judgment (one paper), Supreme Court, New York County (Edward Greenfield, J.), entered March 31, 1995, which, *inter alia*, granted defendants' motion to dismiss the complaint, without prejudice to the commencement of a CPLR article 78 proceeding, if warranted, after the exhaustion of administrative remedies, unanimously modified, on the law, without costs, to deny the motion as to plaintiff's first cause of action against defendant City of Hope, and otherwise affirmed.

Initially, plaintiff was entitled to amend her complaint as of right (CPLR 3025 [a]), and we will therefore review the allegations as they appear in the amended complaint.

In her amended complaint, plaintiff alleges that she was, for several years, a member of, and then president of, the New York based East End Auxiliary Chapter of defendant City of Hope, a nationally recognized California not-for-profit hospital and research organization. The East End Auxiliary Chapter existed for the purpose of raising funds for City of Hope's work and, during plaintiff's three-year tenure as president, raised in excess of $750,000 for that purpose. Plaintiff, who served without salary and was concededly one of City of Hope's most successful fundraisers and the recipient of a number of awards, admits that for the first few years of her tenure as president, she remained essentially unaware of the Chapter's specific financial transactions.

In 1991, she began to realize that, as president, she should familiarize herself with the details of the Chapter's finances. She therefore requested of the Chapter's treasurer, defendant Mary Mallen, specific information regarding the income and expenses involved in various events, and also asked that, in the future, the treasurer submit information regarding all

deposits to and checks drawn on the Chapter's bank account for review by the Chapter's board of directors at their meetings. Plaintiff notes that these requests were in accord with the Chapter's bylaws, which require the treasurer to submit at every local board meeting a current financial report and to immediately report in writing to committee chairs regarding any fundraising activities.

Plaintiff continued to request such information from Ms. Mallen, but was unable to obtain satisfactory responses. Instead, she learned that, although the bylaws require that all checks drawn on the Chapter's account be signed by two signatories, i.e., two officers of the Auxiliary, preferably the treasurer and the president of the Auxiliary, and/or two members of the City of Hope executive staff at the regional or national level, it was Ms. Mallen's practice to have the checks signed in blank by other officers of the Chapter so that she could simply issue them on her own. Plaintiff had never signed or even seen any checks before their issuance. Nor had she or the board ever received any financial statement or bank statement during her tenure as president.

Then, in February of 1992, plaintiff was presented with the Chapter's tax return for her signature. The return did not have the preparer's name on it and Ms. Mallen declined to tell plaintiff who had prepared it. Plaintiff was also concerned because, although she had been president for several years, and although it appeared that her signature was required on the Chapter's return, she had never before been asked to sign a tax return. Moreover, upon examining the return, it appeared to her that the Chapter's income and expenses were not being reported accurately.

A board meeting was then scheduled and Ms. Mallen was informed that she would be expected to present a report detailing all disbursements for the prior fiscal year, the period covered by the tax return. At that meeting, plaintiff felt that the information which was provided was incomplete. Moreover, after the meeting, a letter went out to the directors of the Chapter who had not been present over what purported to be plaintiff's signature, informing them, in essence, that Ms. Mallen's work had been satisfactory, that the financial difficulties had been resolved, and that, in the future, the accounting and bookkeeping for the Chapter would be handled by a computerized system in California at the charity's national headquarters. Plaintiff claims that this letter, which bears a signature which does not resemble plaintiff's, was not written or authorized by her. Upon becoming aware of it, plaintiff, who

now was convinced that there had been financial improprieties, immediately sent a letter to the Chapter's directors, which she copied to the regional or national headquarters, stating that she had not authorized the prior communication and that her efforts to obtain and make available to the Chapter's board a "complete and detailed accounting of the disposition of the proceeds of collections" had been "frustrated".

In light of this evidence of impropriety, plaintiff, who had received $4,500 in the charity's name, decided, upon consultation with several other board members, to open a separate bank account in City of Hope's name in which to deposit these funds so as to safeguard them. On March 18, 1992, a meeting of the Chapter's board was held to discuss the opening of this account and plaintiff's actions were ratified by the board. Later on the same day, plaintiff received a fax from defendant Sanford Shapero, chief executive officer of the national organization, informing her that her Chapter presidency and membership in the organization were being terminated based on her opening of an unauthorized bank account and her failure to provide information to her Chapter's treasurer regarding money received on the charity's behalf.

On March 24, 1992 a letter was sent by Mr. Shapero to members of the East End Chapter informing them that, as of March 19, plaintiff would no longer be serving as either president or member of the Chapter. Subsequently, on April 3, 1992, a letter was sent to members of the East End Chapter, apparently in response to inquiries and/or protests regarding plaintiff's ouster, which stated:

"In order to protect the confidentiality between Mrs. Jane Pontarelli and the City of Hope * * * it would be inappropriate for us to go into any details concerning the parent Corporation's Board of Director's action in the situation regarding Mrs. Pontarelli.

"Please rest assured that when the Board of Directors of the City of Hope, our volunteer governing body, is forced to take action with fellow volunteers there are always exceptional and extraordinary circumstances which would have to mandate that behavior. The Board would never act in an irresponsible fashion nor without complete and total investigation and factual information before them. The action was taken because of considerable information, of which you are unaware and/or have been given misinformation about.

"You have been given some seriously inaccurate information concerning financial reports. Please disregard this false information, and know that there were no internal politics or any

other problems that prompted this drastic action. * * * We hope you can find it in your heart to understand that when this terrible situation came about, we were forced to act upon it."

Finally, on various dates, a third letter was sent to several members of the Chapter, which stated: "Suffice it to say that the information received by this office and our Board of Directors compelled us to take the action we did in order to protect the City of Hope and its 501 (c) (3) charitable status with the Internal Revenue Service. When fiduciary duties * * * are not met and upheld, the Board of Directors of the Parent Corporation must take action. There is considerable information that the Chapter members do not have. I assure you that our Board of Directors and this office would never act inappropriately concerning volunteers or fund raising activities."

Plaintiff brought this action alleging, first, that she was libeled by these letters, second, that her presidency and membership were improperly revoked in violation of the organization's bylaws, and third, that the individual members of the national board of directors of the organization had ratified and were therefore individually liable for these wrongs. The IAS Court dismissed the complaint on both jurisdictional and substantive grounds, but noted that, as to her second cause of action claiming that her membership and presidency had been wrongfully terminated, plaintiff was entitled to bring an article 78 proceeding once she had exhausted her administrative remedies. On this appeal, plaintiff confines her arguments to the first and third causes of action.

First, we find that the IAS Court properly found that as to all of the individual nondomiciliary defendants, plaintiff has failed to allege a sufficient basis for personal jurisdiction. There is no basis to exercise "long-arm" jurisdiction over the nondomiciliary defendants pursuant to CPLR 302 (a) (1) where, as here, plaintiff has failed to set forth any allegations showing that defendants had transacted any purposeful business activity bearing a substantial relationship to the subject matter of the lawsuit in this State (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467), or under CPLR 302 (a) (2) or (3) where, as here, the only tort alleged to have been committed, defamation of character, cannot form the basis for long-arm jurisdiction under the specific language of the statute. Moreover, the IAS Court properly held that the unpaid directors are immune from suit under Not-For-Profit Corporation Law § 720-a and CPLR 3211 (a) (11), absent allegations of their gross negligence or intention to cause harm. Thus, since plaintiff's third cause

of action is alleged solely against the individual directors, it was properly dismissed. And, as to the charity's paid employees who are residents of this State, the IAS Court properly found that plaintiff has failed to state a cause of action, since she has not alleged any facts which indicate that they played any role in preparing or disseminating the allegedly libelous statements.

However, we find that as to defendant City of Hope, which does not contest jurisdiction, the IAS Court erred in dismissing the complaint for failure to state a cause of action.

First, viewing the allegations in the complaint as true and according them every favorable inference, as we are required to do (*Sanders v Winship*, 57 NY2d 391, 394; *Le Bar Bat v Shallo*, 198 AD2d 49, 50), we find that the letters which were sent by defendant are clearly capable of being found to be defamatory per se, and that there was therefore no need for plaintiff to allege special damages, since a jury could find that the statements, in and of themselves and without regard to any extrinsic evidence, tend " 'to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of [her] in the minds of right-thinking persons' " (*Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369, 379, *cert denied* 434 US 969). For example, the letters stated that, in regard to the fact that plaintiff would no longer serve as president or member of the Chapter, the charitable organization had been "forced to take action" under circumstances which were "exceptional and extraordinary", that "there were no internal politics or any other problems that prompted this drastic action", that the situation which forced the action was "terrible", that "fiduciary duties" had not been upheld and that the action had been necessary to "protect the City of Hope" as well as its tax exempt status. It is evident that a reasonable person could read these letters to mean that plaintiff had been removed from her position because of a failure to uphold her fiduciary obligations which was egregious enough to endanger the charity as a whole as well as its tax exempt status.

Moreover, to the degree that these statements were expressions of opinion, they were not protected as such since the opinions were clearly meant to be understood as based on facts known to the organization, but unknown to the reader (*Sweeney v Prisoners' Legal Servs.*, 146 AD2d 1, *lv dismissed* 74 NY2d 842; *cf., Parks v Steinbrenner*, 131 AD2d 60, 66 ["So long as the opinion is accompanied by a recitation of the facts upon which it is based it is deemed a 'pure opinion' and is afforded complete

immunity even though the facts do not support the opinion."]). Indeed, this was not merely implied, but was specifically and repeatedly stated: "[I]t would be inappropriate for us to go into any details * * *. The Board would never act in an irresponsible fashion nor without complete and total investigation and factual information before them. The action was taken because of considerable information, of which you are unaware and/or have been given misinformation about. * * * [T]he information received by this office and our Board of Directors compelled us to take the action we did * * *. When fiduciary duties * * * are not met and upheld, the Board of Directors of the Parent Corporation must take action. There is considerable information that the Chapter members do not have."

Although plaintiff concedes that the statements made in the communications by Mr. Shapero to the members of the local Chapter of the charity are on a subject in which both have a corresponding interest, i.e., the reasons why plaintiff will no longer serve as president or remain as a member of the Chapter, and are therefore protected by a qualified privilege (*Liberman v Gelstein*, 80 NY2d 429, 437), that privilege may be overcome by evidence of malice, i.e., " 'knowledge that [the statement] was false or * * * reckless disregard of whether it was false or not' " (*supra*, at 438, quoting *New York Times Co. v Sullivan*, 376 US 254, 280). Here, plaintiff has clearly alleged that the communications were made with malice. Indeed, the gravamen of plaintiff's action is that defendant ousted her from her position for the purpose of forestalling her inquiries into financial improprieties and then knowingly and intentionally misled the membership into believing that it had been plaintiff herself who was guilty of egregious impropriety warranting her removal. This is obviously sufficient to state the element of malice. Concur—Rosenberger, J. P., Ellerin, Rubin and Kupferman, JJ.