Best Van Lines, Inc. v. Walker

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2005

(Argued:  April 27, 2006          Decided:  June 26, 2007)

Docket No. 04-3924-cv

-------------------------------------

BEST VAN LINES, INC.,

Plaintiff-Appellant,

- v -

TIM WALKER,

Defendant-Appellee.

-------------------------------------

Before:  KEARSE, McLAUGHLIN, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Gerard E. Lynch, Judge).  The plaintiff brought suit against the defendant, an Iowa resident, for defamation based on comments he posted on his website.  The district court granted the defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction under N.Y. C.P.L.R. § 302(a), New York's "long-arm" jurisdiction statute.

Affirmed.

Tim Walker, Waverly, IA, Defendant-Appellee, pro se.

Thomas Freedman (Terrence A. Oved, Darren Oved, Eric S. Crusius, on the

brief), Oved & Oved, New York, NY, for Plaintiff-Appellant.

Slade R. Metcalf (Katherine M. Bolger, on the brief), Hogan & Hartson, LLP, New York, NY, amicus curiae in support of Defendant-Appellee.[1]

SACK, Circuit Judge:

The defendant, Tim Walker, a resident of Waverly, Iowa, is the proprietor of a not-for-profit internet website that provides information and opinions about household movers. In August 2003, Walker posted derogatory comments about the plaintiff, Best Van Lines, Inc. ("BVL"), a New York-based moving company. Walker asserted, at two different locations on his website, that BVL was performing household moves without legal authorization and without insurance that is required by law. Less than a month later, BVL brought suit against Walker in the United States District Court for the Southern District of New York alleging that the statements about it on the website were false, defamatory, and made with an intent to harm BVL. Compl. ¶¶ 21-30. BVL sought injunctive and monetary relief.

On May 4, 2004, the district court (Gerard E. Lynch, Judge) granted Walker's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that N.Y. C.P.L.R. § 302(a), the New York State "long-arm" statute, did not give the court personal jurisdiction over Walker. Best Van Lines, Inc. v.

---

[1] Because the defendant-appellee was not represented by counsel and the appeal raises difficult issues, we requested pro bono counsel to appear for him as amicus curiae. The Court is grateful for counsel's participation.

Walker, 03 Civ. 6585, 2004 WL 964009, at *1, 2004 U.S. Dist. LEXIS 7830, at *1 (S.D.N.Y. May 4, 2004). Having concluded that it lacked jurisdiction under the statute, the court found it unnecessary to consider whether asserting jurisdiction over Walker would violate his constitutional right to due process. Id. at *7, 2004 U.S. Dist. LEXIS 7830, at *24. Because BVL had not demonstrated a prima facie case supporting jurisdiction, the court also denied jurisdictional discovery.

We affirm.

## BACKGROUND

The defendant, Tim Walker, is the proprietor of a website, "MovingScam.com" (the "Website"). He operates it from his home in Waverly, Iowa. As its name suggests, the Website provides consumer-related comments, most of them derogatory, about household movers in the United States. On or about August 5, 2003, Walker posted statements about BVL in the section of the Website called "The Black List Report." Under the heading "Editor's Comments," Walker wrote that "as of 8/5/2003 [BVL] was performing interstate moving services without legal authority from the Federal Motor Carrier Safety Administration, and did not carry Cargo insurance as required by law." Compl. ¶ 8. Walker made similar factual assertions in response to a question about BVL that was posted on the message-board section of the Website by a person whose whereabouts are not disclosed in the record.[2]

---

[2] In response to the query, Walker wrote, "If you are talking about Best Van Lines of Brooklyn, NY, then DO NOT USE

On August 26, 2003, BVL instituted this lawsuit against Walker by filing a complaint in the United States District Court for the Southern District of New York. In it, BVL alleges that the statements about it on the Website were false, defamatory, and made with an intention to harm it. Compl. ¶¶ 21-30. We assume at this stage of the proceedings that BVL's allegations are correct and can be proved. BVL seeks to have Walker enjoined from publishing further defamatory statements about BVL. It also seeks compensatory and punitive damages totaling $1.5 million.

Walker moved to transfer the action to the United States District Court for the Southern District of Iowa. BVL opposed the motion, but also treated it as a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Best Van Lines, 2004 WL 964009, at *1, 2004 U.S. Dist. LEXIS 7830, at *3. In his reply, Walker, representing himself, argued that N.Y. C.P.L.R. § 302(a) -- New York's long-arm statute -- did not give New York courts jurisdiction over him for purposes of this lawsuit. Id.

The district court granted what was construed to be Walker's motion to dismiss. The court concluded that BVL had failed to allege facts sufficient to show that Walker had

---

THEM! They have only had their DOT license since February, 2003 and have NO interstate authority whatsoever with the Federal Motor Carrier Safety Administrator. They also have not provided the FMCSA with proof of any Cargo Insurance, and they have a vehicle Out of Service record of 40% and a driver Out of Service record of 100% (national averages are 22.9% and 7.21%, respectively)." Compl. ¶ 11.

4

transacted business for purposes of section 302(a)(1), or that its suit arose from any such transaction. Id. at *7, 2004 U.S. Dist. LEXIS 7830, at *24. The court found it unnecessary to address whether asserting jurisdiction over Walker would be consistent with the Fourteenth Amendment's Due Process guarantee. Id. It also denied permission to take jurisdictional discovery. Id., 2004 U.S. Dist. LEXIS 7830, at *24-25.

BVL appeals.

**DISCUSSION**

I. Standard of Review

We review a district court's dismissal of an action for lack of personal jurisdiction de novo. Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 102 (2d Cir. 2006). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." Thomas v. Ashcroft, 470 F.3d 491, 495 (2d Cir. 2006).

II. Personal Jurisdiction in New York

A.  The Issue on Appeal

This appeal raises a single question: whether the United States District Court for the Southern District of New York had personal jurisdiction over Walker for purposes of entertaining this lawsuit. To answer that question, we look first to the law of the State of New York, in which the district court sits. Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998). If, but only if, our answer is in the affirmative,

5

we must then determine whether asserting jurisdiction under that provision would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution.  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945).

Agreeing with the district court, we conclude that while New York appellate courts have not decided this precise issue, under well-settled principles of New York law, the district court did not have such jurisdiction.  We therefore need not address the second question: whether, if New York law conferred it, asserting such jurisdiction would be permissible under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[3]  Still, because the analysis of the state statutory and federal constitutional limitations have become somewhat entangled in New York jurisprudence, we think it advisable to explore the relationship between the two in some detail.

B. Constitutional Limits on Personal Jurisdiction

In 1945, the Supreme Court held that states' power to exercise personal jurisdiction over defendants consistent with the federal Constitution was not contingent on those defendants'

---

[3]Because we think that we can determine this issue based on well-settled principles of New York law, we have decided not to certify it to the New York Court of Appeals.  See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006) (deciding a question of how to interpret section 302(a)(1) that was "novel . . ., both in this court and in the New York courts").

6

physical presence within the states' borders. Int'l Shoe, 326 U.S. at 316. Instead, in order to exercise personal jurisdiction over out-of-state defendants, the Due Process Clause of the Fourteenth Amendment requires only that the defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. (citation omitted).

A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the "quality and nature," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985), of the defendant's contacts with the forum state under a totality of the circumstances test, id. at 485-86. The crucial question is whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)) (internal quotation marks omitted), "such that [the defendant] should reasonably anticipate being haled into court there," id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).[4]

_____

[4]
Applying this principle, the Court has held that the Due Process Clause forbids the exercise of personal jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's decision to drive there, World-Wide Volkswagen Corp. v. Woodson[, 444 U.S. 286 (1980)]; over a divorced husband sued for child-support payments

7

Applying these principles, in Keeton v. Hustler Magazine Inc., 465 U.S. 770 (1984), the Supreme Court concluded that a New Hampshire federal district court had jurisdiction over the defendant magazine publisher, an Ohio corporation with its principal place of business in California, id. at 772. The Court based its conclusion on the fact that the defendant's magazine in which the alleged libel appeared had a monthly circulation in New Hampshire of 10,000 to 15,000. This established that the defendant "continuously and deliberately exploited the New Hampshire market," creating in the defendant a reasonable expectation that it might be haled into court there in an action based on the contents of the magazine. Id. at 781.

Also invoking the minimum contacts rubric, in Calder v. Jones, 465 U.S. 783 (1984) -- decided the same day as Keeton -- the Court concluded that a California state court had personal jurisdiction over The National Enquirer, a nationally distributed weekly with editorial offices in Florida, and a reporter and an editor, both Florida residents, in a lawsuit based on an

whose only affiliation with the forum was created by his former spouse's decision to settle there, Kulko v. California Superior Court, 436 U.S. 84 (1978); and over a trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there, Hanson v. Denckla, 357 U.S. 235 (1958). In such instances, the defendant has had no "clear notice that it is subject to suit" in the forum and thus no opportunity to "alleviate the risk of burdensome litigation" there. World-Wide Volkswagen Corp. v. Woodson, [444 U.S.] at 297.

Burger King, 471 U.S. at 475 n.17.

8

allegedly libelous story about the California activities of a California resident.  Id. at 786, 788.  Employing what has since come to be called the "effects test," the Court reasoned that because "California is the focal point both of the story and of the harm suffered," jurisdiction over the defendants was "proper in California based on the 'effects' of their Florida conduct in California."  Id. at 789.  In the language of minimum contacts, when the defendants committed "their intentional, and allegedly tortious, actions . . . expressly aimed at California," they "must [have] 'reasonably anticipate[d] being haled into court there' to answer for the truth of the statements made in their article."  Id. at 789-90 (citations omitted).

Although Calder and Keeton were handed down simultaneously on similar subjects, they relied on independent, if conceptually overlapping, methods of demonstrating minimum contacts -- Keeton on the defendant's overall activity within the forum state; Calder on the in-state effects of out-of-state activity.

C. Long-Arm Statutes and N.Y. C.P.L.R. § 302(a)

Relying on International Shoe, state legislatures began enacting laws, known as "long-arm" statutes,[5] prescribing the

_____

[5]The popular name of these statutes seems likely to have roots in the expression "the long arm of the law."  See, e.g., Charles Dickens, The Old Curiosity Shop, Ch. 73 (1841) ("[T]he failure of a spirited enterprise in the way of their profession . . . caused their career to receive a sudden check from the long and strong arm of the law."); see also Michael Quinion, World Wide Words, http://www.worldwidewords. org/qa/qa-lon1.htm (last visited June 25, 2007) (tracing the

9

terms under which their courts could exercise personal jurisdiction.  Most of these laws explicitly provide, or have been interpreted to provide, that jurisdiction will be permitted to the full extent allowed by the federal Constitution.[6]  When federal courts sit in such states, there is but one inquiry as to specific personal jurisdiction over the out-of-state defendant: whether the defendant has sufficient contacts with the forum state to satisfy the requirements of due process.  See, e.g., Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002) ("Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." (citations and internal quotation marks omitted)).

The reach of New York's long-arm statute, by contrast, does not coincide with the limits of the Due Process Clause.  Analysis under it therefore may involve two separate inquiries, one statutory and one constitutional.  If jurisdiction is

---

expression back to The Old Curiosity Shop).

[6]See, e.g., Cal. Civ. Proc. Code § 410.10; 14 M.R.S. § 704-A (Maine); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6, 389 N.E.2d 76, 79 (1979) (interpreting Massachusetts law); N.J. Ct. R. 4:4-4; Ricker v. Fraza/Forklifts of Detroit, 160 Ohio App. 3d 634, 640, 828 N.E.2d 205, 210 (Ohio Ct. App. 2005) (interpreting Ohio law); 42 Pa.C.S. § 5322; R.I. Gen. Laws § 9-5-33; Tex. Civ. Prac. & Rem. Code § 17.042; Utah Code § 78-27-22; Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002) (interpreting Virginia law).

statutorily impermissible, of course, we need not reach the question of its constitutionality.

The New York long-arm statute provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>>
>> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>>
>> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>>
>>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>>
>>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>>
>> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a). Importantly for present purposes, sections 302(a)(2) and (3), which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries in the state, respectively,

11

explicitly exempt causes of action for the tort of defamation[7] from their scope, whether or not such jurisdiction would be consistent with due process protection.  The defamation exceptions thus create a "gap" between the jurisdiction conferred by the New York statute and the full extent of jurisdiction permissible under the federal Constitution.  See Ingraham v. Carroll, 90 N.Y.2d 592, 596-97, 687 N.E.2d 1293, 1294-95, 665 N.Y.S.2d 10, 11-12 (1997) ("[S]ubdivision [302(a)(3)] was not designed to go to the full limits of permissible jurisdiction. The limitations contained in subparagraphs (i) and (ii) were deliberately inserted to keep the provision well within constitutional bounds.") (citations and internal quotation marks omitted; second brackets in original).[8]

---

[7] "Defamation" includes the torts of libel (usually written) and slander (usually oral).  See, e.g., Marcone v. Penthouse Int'l Magazine for Men, 754 F.2d 1072, 1080 n.1 (3d Cir. 1985); Belli v. Orlando Daily Newspapers, Inc., 389 F.2d 579, 586 (5th Cir. 1967); Varian Med. Sys., Inc. v. Delfino, 113 Cal. App. 4th 273, 293-95, 6 Cal. Rptr. 3d 325, 340-43 (6th Dist. 2003), rev'd on other grounds, 35 Cal. 4th 180, 25 Cal. Rptr. 3d 298, 106 P.3d 958 (2005).

[8] There are other possible "gaps" between the extent of jurisdiction allowed by the New York statute and that permitted by due process.  See, e.g., Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust, Ltd., 62 N.Y.2d 65, 71-72, 464 N.E.2d 432, 435, 476 N.Y.S.2d 64, 67 (1984) (discussing quasi-in-rem jurisdiction, and noting that "C.P.L.R. [§] 302 does not provide for in personam jurisdiction in every case in which due process would permit it," so that "a 'gap' exists in which the necessary minimum contacts, including the presence of defendant's property within the State, are present, but personal jurisdiction is not authorized by C.P.L.R. [§] 302").  Section 302(b) also prescribes limits on jurisdiction in matrimonial cases that may not be coterminous with the jurisdictional reach of due process. See N.Y. C.P.L.R. § 302(b).

12

New York's Appellate Division, First Department,[9] has reflected on the reasons for the defamation exception.

> [T]he Advisory Committee intended to avoid unnecessary inhibitions on freedom of speech or the press. These important civil liberties are entitled to special protections lest procedural burdens shackle them. It did not wish New York to force newspapers published in other states to defend themselves in states where they had no substantial interests, as the New York Times was forced to do in Alabama.

Legros v. Irving, 38 A.D.2d 53, 55, 327 N.Y.S.2d 371, 373 (1st Dep't 1971) (referring to N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964), which reversed a large Alabama libel judgment against the New York Times based on a pro-civil rights advertisement that it published where jurisdiction was based on limited daily circulation of the New York Times within Alabama).

In light of these intentions, one might think that the New York State legislature meant for no provision of the long-arm statute to grant jurisdiction over an out-of-state defendant with respect to a cause of action for defamation. See Vardinoyannis v. Encyclopedia Britannica, Inc., 89 Civ. 2475, 1990 WL 124338, at *6 n.3, 1990 U.S. Dist. LEXIS 10881, at *9 n.3 (S.D.N.Y. Aug. 20, 1990) (Leval, J.) ("Because §§ 302(a)(2) and (3) expressly exclude actions for defamation, there are strong arguments that the legislature intended to bar use of the long-arm statute in

---

[9]"We are bound, as was the district court, to apply [New York] law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on [an] issue, would reach a different conclusion." Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 134 (2d Cir. 1999) (citations omitted).

13

defamation cases."). But New York courts have not gone that far. Under New York law, when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1), even though section 302(a)(3) -- which explicitly concerns jurisdiction as to out-of-state tortious acts that cause in-state injury -- excludes defamation cases from its scope.

Legros itself relied on section 302(a)(1) to support jurisdiction over an out-of-state defendant in a defamation case. After describing the history of the statute, the court defended its reliance on section 302(a)(1), which covers transactions of business within the state, to establish jurisdiction.

> There is a clear distinction between a situation where the only act which occurred in New York was the mere utterance of the libelous material and on the other hand, a situation where purposeful business transactions have taken place in New York giving rise to the cause of action. Where purposeful transactions of business have taken place in New York, it may not be said that subjecting the defendant to this State's jurisdiction is an "unnecessary inhibition on freedom of speech or the press."

Legros, 38 A.D.2d at 55-56, 327 N.Y.S.2d at 373. Because "virtually all the work attendant upon publication of the book [containing the alleged libel] occurred in New York," jurisdiction over the defendant under subsection (1) was proper. Id. at 56, 327 N.Y.S.2d at 373.

D. Defamation Cases under Section 302(a)(1)

14

New York courts evaluating specific jurisdiction under section 302(a)(1) look to both the language of the statute and the relation between the alleged conduct and the cause of action. To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction. See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166 (2006). Courts look to "the totality of the defendant's activities within the forum," Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors, 510 F.2d 870, 873 (2d Cir. 1975) (citation and internal quotation marks omitted), to determine whether a defendant has "transact[ed] business" in such a way that it constitutes "purposeful activity" satisfying the first part of the test, see id. at 874; Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18-19, 209 N.E.2d 68, 75, cert. denied, 382 U.S. 905 (1965). As for the second part of the test, "[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted); accord Deutsche Bank, 7 N.Y.3d at 71, 850 N.E.2d at 1142, 818 N.Y.S.2d at 166-67.

1. Transacting Business

With respect to the first part of the test for jurisdiction under section 302(a)(1), New York courts define "transact[ing] business" as purposeful activity -- "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 229 N.E.2d 604, 607, 283 N.Y.S.2d 34, 37-38 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).[10]  This "purposeful[] avail[ment]" language

---

[10]Section 302(a)(1)'s "transact[ing] business" language does not require that the business in question be commercial in nature.  In Padilla v. Rumsfeld, 352 F.3d 695, 709 (2d Cir. 2003), rev'd on other grounds, 542 U.S. 426 (2004), we noted that the purpose of section 302(a)(1) "was to extend the jurisdiction of New York courts over nonresidents who have engaged in some purposeful activity here in connection with the matter in suit" and that "the statute's jurisprudential gloss and its legislative history suggest that its 'transacts business' clause is not restricted to commercial activity." (citations, brackets, and internal quotation marks omitted) (emphasis added).  We noted there that "transacting business" under Section 302(a)(1) has been held to include:

> engaging in active bidding on an open phone line from California, Parke-Bernet[ Galleries v. Franklyn, 26 N.Y.2d 13, 19, 308 N.Y.S.2d 337, 342, 256 N.E.2d 506, 509 (1970)]; the conducting of proceedings and disciplinary hearings on membership by a private organization, Garofano v. U.S. Trotting Assoc., 78 Misc. 2d 33, 355 N.Y.S.2d 702, 705-06 (Sup. Ct. 1974); the execution of a separation agreement, Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y.S.2d 36, 38 (N.Y. App. Div. 1967); the making of a retainer for legal services, Elman v. Belson, 32 A.D.2d 422, 302 N.Y.S.2d 961, 964-65 ([N.Y. App. Div.] 1969); the entry into New York by non-domiciliary defendants to attend a meeting, Parker v. Rogerson, 33 A.D.2d 284, 307 N.Y.S.2d 986, 994-95 (N.Y. App. Div. 1970), appeal dismissed, 26 N.Y.2d 964, 311 N.Y.S.2d 7, 259 N.E.2d 479 (1970); and the conducting of audits, U.S. Steel Corp. v. Multistate Tax Comm'n, 367 F. Supp. 107, 121 (S.D.N.Y.

16

defining "transacting business" has been adopted by the New York Court of Appeals from Supreme Court cases analyzing the constitutional limitations on a state's power to assert personal jurisdiction over a non-domiciliary defendant. See Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 43, 527 N.Y.S.2d 195, 198 (1988) ("New York's long-arm statute, C.P.L.R. § 302, was enacted in response to [inter alia, McGee v. International Life Ins. Co., 355 U.S. 220 (1957), and International Shoe Co. v. Washington, 326 U.S. 310 (1945)]."). New York decisions thus, at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes "purposeful[] avail[ment]" "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Denckla, 357 U.S. at 253; see, e.g., McKee, 20 N.Y.2d at 382, 229 N.E.2d at 607, 283 N.Y.S.2d at 37-38 (quoting Denckla, 357 U.S. at 253).

It may be that the meaning of "transact[ing] business" for the purposes of section 302(a)(1) overlaps significantly with the constitutional "minimum contacts" doctrine. See McKee, 20 N.Y.2d at 382, 229 N.E.2d at 607, 283 N.Y.S.2d at 37 ("[I]t seems to us the contacts here, rather than being minimal, were so infinitesimal, both in light of Hanson v. Denckla, 357 U.S. 235

1973).
Padilla, 352 F.3d at 709 n.19.

17

[(1958),] and Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443[, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)], that jurisdiction of the New York courts cannot be sustained."); Deutsche Bank, 7 N.Y.3d at 71-72, 850 N.E.2d at 1142-43, 818 N.Y.S.2d at 166-67 (discussing the section 302(a)(1) and due process requirements seemingly simultaneously); Donini Int'l, S.p.A. v. Satec (U.S.A.) LLC, 03 Civ. 9471, 2004 WL 1574645, at *5, 2004 U.S. Dist. LEXIS 13148, at *16 (S.D.N.Y. July 13, 2004) (noting that the analysis under section 302 is "in essence, the same as that established by the United States Supreme Court to evaluate the constitutionality of personal jurisdiction under long-arm statutes").  But we do not understand New York courts to teach that the "gap" created by the defamation exceptions in sections 302(a)(2) and (3), see Ingraham, 90 N.Y.2d at 597, 687 N.E.2d at 1294-95, 665 N.Y.S.2d at 11-12, is eliminated by the "transact[ing] business" analysis.  Some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute.

New York courts do not interpret "transact[ing] business" to include mere defamatory utterances sent into the state.  Although section 302(a)(1) does not exclude defamation from its coverage, New York courts construe "transacts any business within the state" more narrowly in defamation cases than they do in the context of other sorts of litigation.  In other cases, "proof of one transaction," or a "single act," "in New York is sufficient to invoke [long-arm] jurisdiction, even though

18

the defendant never enters New York," Deutsche Bank, 7 N.Y.3d at 71, 850 N.E.2d at 1142, 818 N.Y.S.2d at 166-67 (internal quotation marks omitted); see also Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 17, 256 N.E.2d 506, 508, 308 N.Y.S.2d 337, 340 (1970) (finding jurisdiction where out-of-state defendant never entered New York, but participated in a live auction in New York by making one telephone call to New York and thus was "receiving and transmitting bids over an open telephone line"); Fischbarg v. Doucet, 38 A.D.3d 270, 832 N.Y.S.2d 164, 2007 N.Y. Slip Op. 1964, at *2 (1st Dep't Mar. 13, 2007) (finding jurisdiction over out-of-state defendants who solicited New York lawyer plaintiff to provide them with legal advice and called, emailed, and faxed the plaintiff in New York pursuant to such representation, though defendants never entered the state); Catauro v. Goldome Bank for Sav., 189 A.D.2d 747, 748, 592 N.Y.S.2d 422, 422 (2d Dep't 1993) (finding jurisdiction where Missouri defendant called a New York bank with an inquiry, "mailed letters to the bank, enclosing the bankbook and the power of attorney," and thereafter received money from the bank). But see Kimco Exchange Place Corp. v. Thomas Benz, Inc., 34 A.D.3d 433, 434, 824 N.Y.S.2d 353, 354 (2d Dep't 2006) ("The defendants' acts of faxing the executed contracts to New York and of making a few telephone calls do not qualify as purposeful acts constituting the transacting of business."). In defamation cases, by contrast, the "single act" of uttering a defamation, no matter how loudly, is not a "transact[ion of] business" that may

19

provide the foundation for personal jurisdiction.  In other words, when the defamatory publication itself constitutes the alleged "transact[ion of] business" for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it.[11]

Consistent with this analysis, in cases where the plaintiff has brought a defamation action based on letters the defendant sent into New York from outside the state, New York courts have concluded that the act of sending the letters into the state does not alone amount to a transaction of business within the state under Section 302(a)(1).  For example, in Kim v. Dvorak, 230 A.D.2d 286, 658 N.Y.S.2d 502 (3d Dep't 1997), the Third Department concluded that the sending of four allegedly defamatory letters by the defendant to health care professionals in New York did not constitute transaction of business in the state, id. at 290, 658 N.Y.S.2d at 505.  To hold otherwise, the court said, would "unjustifiably extend the intendment of the Legislature to allow, in limited circumstances, the reach of this State's jurisdiction beyond its borders."  Id.  In Pontarelli v. Shapero, 231 A.D.2d 407, 647 N.Y.S.2d 185 (1st Dep't 1996), the

_____

[11]Our interpretation of section 302(a)(1) factors into the analysis the defamation exemptions contained in sections 302(a)(2) and (3) consistent with the "cardinal rule" of statutory construction "that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context."  King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (citations omitted); accord Handberry v. Thompson, 436 F.3d 52, 68 (2d Cir. 2006).

First Department similarly decided that the sending of two allegedly defamatory letters and one facsimile into New York did not constitute transaction of business in the state for purposes of section 302(a)(1), id. at 410-11, 647 N.Y.S.2d at 188. And in Strelsin v. Barrett, 36 A.D.2d 923, 320 N.Y.S.2d 886 (1st Dep't 1971), the court concluded that it did not have jurisdiction over a California defendant who had allegedly libeled the plaintiff in a television broadcast recorded in California. Subsequent distribution of a tape of the broadcast in New York "d[id] not constitute doing business in New York by the newscaster who performed elsewhere." Id. at 923, 320 N.Y.S.2d at 885.

To be sure, New York courts have found jurisdiction in cases where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers, but only where the conduct also included something more. In Sovik v. Healing Network, 244 A.D.2d 985, 665 N.Y.S.2d 997 (4th Dep't 1997), for example, the Appellate Division, Fourth Department, concluded that one allegedly defamatory letter sent by the defendants could provide a basis for jurisdiction where the defendants had "drafted the letter and either distributed or authorized the distribution of the letter in the Buffalo area," thereby demonstrating the defendants' "active involvement and personal control [in New York] over the writing and distribution of the allegedly defamatory statement." Id. at 987, 665 N.Y.S.2d at 999 (affirming district court's decision that plaintiffs were entitled to jurisdictional discovery); cf. Legros, 38 A.D.2d at

21

55-56, 327 N.Y.S.2d at 373 (concluding that the publication of an allegedly defamatory book for which "virtually all the work attendant upon publication" had occurred in New York, including the research for it and the negotiations and execution of the contract with the publisher, constituted "transactions of business" for the purposes of section 302(a)(1)); Modica v. Westchester Rockland Newspapers, Inc., 54 Misc. 2d 1086, 283 N.Y.S.2d 939 (Sup. Ct. Westchester County 1967) (finding jurisdiction proper under section 302(a)(1) where the newspaper containing an allegedly defamatory column was published in New York for New York readers).

### 2. "Arising from" a Transaction of Business

If the defendant is transacting business in New York, the second half of the section 302(a)(1) inquiry asks whether the cause of action "aris[es] from" that business transaction or transactions. See Deutsche Bank, 7 N.Y.3d at 71, 850 N.E.2d at 1142, 818 N.Y.S.2d at 167. "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted). "A connection that is 'merely coincidental' is insufficient to support jurisdiction." Id. (citation omitted).

Under the "arises from" prong, New York courts have also concluded that they lacked jurisdiction over out-of-state defendants accused of having uttered defamatory falsehoods where the "[defamation] claim did not arise from the defendants' specific business transactions in New York." Realuyo v. Villa Abrille, 01 Civ. 10158, 2003 WL 21537754, at *6, 2003 U.S. Dist. LEXIS 11529, at *17 (S.D.N.Y. July 8, 2003) (noting that the defendants were not involved in the publication or distribution of the allegedly libelous article at issue). In Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 522 N.E.2d 1027, 527 N.Y.S.2d 729 (1988), for example, a California resident wrote two letters to the president and board of trustees of St. Lawrence University. In the letter, he alleged that his daughter had seen the plaintiff, a school athletic coach, drunk at a fraternity party. Id. at 828, 522 N.E.2d at 1028, 527 N.Y.S.2d at 730. A newspaper later published one of the letters, which it had received from one of the trustees, and quoted from a telephone interview with the daughter, who was also a California resident. In concluding that New York courts did not have jurisdiction over the father and daughter in a defamation suit brought against them by the coach, the New York Court of Appeals did not address whether the letters or the telephone call into the state could themselves constitute "purposeful activities." Instead, it found that even if the daughter's attendance at St. Lawrence could qualify as a purposeful activity, jurisdiction would be improper because the cause of action did not arise out of that contact

23

with New York.  Id. at 829, 522 N.E.2d at 1029, 527 N.Y.S.2d at 731.  And in American Radio Association, AFL-CIO v. A. S. Abell Co., 58 Misc. 2d 483, 296 N.Y.S.2d 21 (Sup. Ct. N.Y. County 1968), the court noted that the defendant, the publisher of the Baltimore Sun, which circulated 400 copies in New York State and derived just over 3% of its advertising revenue from New York, might transact business in New York, but the court concluded that the defamation claim did not arise from any of those contacts, id. at 484-85, 296 N.Y.S.2d at 22-23. ("[N]ot one [of the alleged contacts] may be relied upon to uphold jurisdiction under the long-arm statute since the cause of action alleged in the complaint does not, as is required by statute, arise from any of the acts enumerated.").  Instead, "[t]he acts of publication, of distribution and of circulation which underlie the alleged grievances occurred in Baltimore and not here."  Id. at 485, 296 N.Y.S.2d at 23.

E. Section 302(a)(1) and Case Law Respecting Defamatory Websites

While no New York appellate court has yet explicitly analyzed a case of website defamation under the "transact[ing] business" provision of section 302(a)(1), several federal district courts in New York have.  Consistent with the principles developed in the New York cases discussed above, these courts have concluded that the posting of defamatory material on a website accessible in New York does not, without more, constitute "transact[ing] business" in New York for the purposes of New York's long-arm statute.  See Realuyo, 2003 WL 21537754, at *7,

24

2003 U.S. Dist. LEXIS 11529, at *20-21 (deciding that the availability of an article on a website, without more, does not amount to "transaction of business" for purposes of section 302(a)(1)); see also Starmedia Network, Inc. v. Star Media, Inc., 00 Civ. 4647, 2001 WL 417118, at *3, 2001 U.S. Dist. LEXIS 4870, at *7 (S.D.N.Y. Apr. 23, 2001) ("[I]t is now well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit.") (citation and quotation indication omitted). In addition, to the extent that there are business transactions incident to establishing a website, a defamation claim based on statements posted on a website does not "arise from" such transactions. See Realuyo, 2003 WL 21537754, at *7, 2003 U.S. Dist. LEXIS 11529, at *20-22 (finding that "the publication of the article was not the transaction of business in New York" and the defamation claim did not arise from advertising links on the website); see also Competitive Techs., Inc. v. Pross, 13297/2006, 14 Misc. 3d 1224(A), 2007 WL 283075, at *3, 2007 N.Y. Misc. LEXIS 217, at *8 (Sup. Ct. Suffolk County, Jan. 26, 2007) (concluding that libelous statements posted on a Yahoo! message board did not give rise to jurisdiction because they were "not in connection with any business transactions").

F. Internet Defamation, and Analysis under Zippo Mfg. Co.

In analyzing personal jurisdiction in the internet context, so many courts have turned to the standards set out more

25

than ten years ago by a judge of the Western District of Pennsylvania in <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997) (<u>cited by</u>, e.g., <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 452 (3d Cir. 2003) (calling <u>Zippo</u> the "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site"); <u>ALS Scan, Inc. v. Digital Serv. Consultants, Inc.</u>, 293 F.3d 707, 713-14 (4th Cir. 2002) (adopting the <u>Zippo</u> model); <u>Cybersell, Inc. v. Cybersell, Inc.</u>, 130 F.3d 414, 418 (9th Cir. 1997); <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)), that the opinion warrants separate mention here.  In <u>Zippo</u>, the court applied traditional due process "minimum contacts" principles to determine whether jurisdiction over the out-of-state website proprietor was constitutionally permissible.  <u>Zippo</u>, 952 F. Supp. at 1122 (citing Pennsylvania's long-arm statute, 42 Pa. C.S.A. § 5322(b), which allows Pennsylvania courts to exercise jurisdiction to the "fullest extent allowed under the Constitution").  Noting that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet," the court explained the spectrum of internet interactivity that many courts have since invoked in determining jurisdiction.

> At one end of the spectrum are situations
> where a defendant clearly does business over
> the Internet.  If the defendant enters into
> contracts with residents of a foreign
> jurisdiction that involve the knowing and

26

> repeated transmission of computer files over
> the Internet, personal jurisdiction is
> proper. At the opposite end are situations
> where a defendant has simply posted
> information on an Internet Web site which is
> accessible to users in foreign jurisdictions.
> A passive Web site that does little more than
> make information available to those who are
> interested in it is not grounds for the
> exercise [of] personal jurisdiction. The
> middle ground is occupied by interactive Web
> sites where a user can exchange information
> with the host computer. In these cases, the
> exercise of jurisdiction is determined by
> examining the level of interactivity and
> commercial nature of the exchange of
> information that occurs on the Web site.

Id. at 1124 (citations omitted).[12]

Several federal district courts in New York have applied the Zippo formulation to website defamation cases in analyzing personal jurisdiction under section 302(a)(1). See Citigroup, 97 F. Supp. 2d at 565 ("At the very least, the interactivity of the [defendant's] site brings this case within the middle category of internet commercial activity. Moreover, the interaction is both significant and unqualifiedly commercial in nature and thus rises to the level of transacting business required under CPLR § 302(a)(1)."); Realuyo, 2003 WL 21537754, at *6-*7, 2003 U.S. Dist. LEXIS 11529, at *20-*22 (declining to exercise jurisdiction over defendant newspaper/website proprietor

---

[12] Ultimately, the Zippo court did not itself rely on this approach to evaluate the defendant's contacts with Pennsylvania. The defendant had sold passwords to its news-services website to 3,000 Pennsylvania subscribers and had contracted with seven Internet access providers in Pennsylvania. Id. at 1126. The court found that such "conduct[] of electronic commerce with Pennsylvania residents constitutes the purposeful availment of doing business in Pennsylvania." Id. at 1125-26.

27

because its website, on which alleged libel was posted, was "passive"; having 332 non-paying email registrants in New York was insufficient to establish jurisdiction under Section 302(a)(1)). In Lenahan Law Offices, LLC v. Hibbs, 04-cv-6376, 2004 WL 2966926, at *6 (W.D.N.Y. Dec. 22, 2004), the plaintiff argued that the defendant's website, which contained allegedly defamatory material about the plaintiff, fell into the "middle range" of the Zippo sliding scale because the website permitted the defendant to answer questions posted by users. The court rejected that argument, concluding that such low-level interactivity was insufficient to support jurisdiction. "Absent an allegation that Hibbs is projecting himself into New York, this Court cannot exercise specific personal jurisdiction over him." Id. Even if such interactivity could constitute "transacting business" under section 302(a)(1), the court concluded, the plaintiff had failed to show that its cause of action "arose" from such transactions since the allegedly defamatory material was posted on a passive portion of the website. Id.

While analyzing a defendant's conduct under the Zippo sliding scale of interactivity may help frame the jurisdictional inquiry in some cases, as the district court here pointed out, "it does not amount to a separate framework for analyzing internet-based jurisdiction." Best Van Lines, 2004 WL 964009, at *3, 2004 U.S. Dist. LEXIS 7830, at *9. Instead, "traditional statutory and constitutional principles remain the touchstone of

28

the inquiry." Id.  As the Zippo court itself noted, personal jurisdiction analysis applies traditional principles to new situations.  Zippo, 952 F. Supp. at 1123 ("[A]s technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase." (quoting Hanson, 357 U.S. at 250-51) (internal quotation marks omitted)). We think that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant "transacts any business" in New York -- that is, whether the defendant, through the website, "purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." Cutco Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986); see also Deutsche Bank, 7 N.Y.3d at 71-72, 850 N.E.2d at 1143, 818 N.Y.S.2d at 167 (determining that there was jurisdiction over a sophisticated institutional trader from Montana who "knowingly initiat[ed] and pursu[ed] a negotiation with [plaintiff] in New York [via instant messaging] that culminated in the sale of $15 million in bonds," thus "enter[ing] New York to transact business").[13]

_____

[13]The spectrum may also be helpful in analyzing whether jurisdiction is permissible under due process principles.  We note that the court in Zippo and most, if not all, of the courts that subsequently adopted the Zippo sliding scale were evaluating whether jurisdiction in those cases comported with due process, under state long-arm statutes that recognized jurisdiction coterminous with the extent allowed by the federal Constitution. See, e.g., Young, 315 F.3d at 261.  We make no comment at this point on the relevance of the Zippo sliding scale in New York in evaluating whether the exercise of jurisdiction would be

III. Long-Arm Jurisdiction over Walker

To decide this appeal, then, we must determine whether the conduct out of which BVL's claim arose was a "transact[ion of] business" under section 302(a)(1).  In other words, were Walker's internet postings or other activities the kind of activity "by which the defendant purposefully avail[ed him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," McKee, 20 N.Y.2d at 382, 229 N.E.2d at 608, 283 N.Y.S.2d at 37-38 (internal quotation marks omitted), and over which the New York legislature intended New York courts to have jurisdiction?  BVL argues that there are three different factual bases for an affirmative conclusion.

A. The "Black List Report"

BVL first asserts that Walker's inclusion of a report on BVL in his "Black List Report" contained allegedly false and defamatory statements about BVL.  Compl. ¶ 7.  As we have seen, New York case law establishes that making defamatory statements outside of New York about New York citizens does not, without more, provide a basis for jurisdiction, even when those statements are published in media accessible to New York readers.  Walker's "Black List Report" seems to be exactly that -- allegedly defamatory statements posted on a website accessible to readers in New York.  As with the column in Realuyo, Walker's

---

consistent with due process.

30

listing of BVL on his Black List arises "solely from the aspect of the website from which anyone -- in New York or throughout the world -- could view and download the allegedly defamatory article." Realuyo, 2003 WL 21537754, at *7, 2003 U.S. Dist. LEXIS 11529, at *21; see also McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (1st Cir. 2005) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum."); Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-50 (7th Cir. 2004) (similar); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713-15 (4th Cir. 2002) (similar); Competitive Techs., Inc. v. Pross, 14 Misc. 3d 1224(A), 2007 WL 283075, at *3, 2007 N.Y. Misc. LEXIS 217, at *9 (Sup. Ct. Suffolk County, Jan. 26, 2007) ("[I]n order to exercise personal jurisdiction over a non-resident defendant, something more than the mere posting of information on a passive web site is required to indicate that the defendant purposefully directed his activities at the forum state." (citation omitted)).

Moreover, the nature of Walker's comments does not suggest that they were purposefully directed to New Yorkers rather than a nationwide audience. Material on the Website discusses interstate moving companies located in many states for the putative benefit of potential persons in many states who will undergo household moves. Compl. ¶ 2. Walker's comments therefore do not establish that, for purposes of section

31

302(a)(1), he "purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." Cutco Indus., 806 F.2d at 365 (alterations and internal quotation marks omitted) (emphasis added).[14]

We conclude that posting the "Black List Report" does not constitute "transact[ing] business" under section 302(a)(1).

B. Walker's Answer to a User's Question

We reach the same conclusion with respect to Walker's allegedly defamatory statement about BVL posted as a response to a user's question. We fail to perceive why the fact that a statement was or was not in response to a question from someone somewhere else would, alone, make a difference. Prompted or otherwise, New York courts require more than "the mere utterance of the libelous material," Legros, 38 A.D.2d at 55, to constitute "transact[ing] business" under section 302(a)(1). See Kim, 230

---

[14]We express no view, of course, as to whether the Black List postings might have satisfied the minimum contacts requirement under the constitutional "effects test" employed in Calder, 465 U.S. at 789-90, or the analysis in Keeton, 465 U.S. at 773-74, 781, based on the defendant's magazine's in-state monthly circulation and the defendant's accompanying continuous and deliberate exploitation of the in-state market. We think it worth noting nonetheless that the Keeton analysis is roughly similar to the inquiry under section 302(a)(1), which focuses on transactions of business within the state. Calder's "effects test," by contrast, is not relevant to the New York long-arm statute analysis under section 302(a)(1). New York courts would evaluate personal jurisdiction asserted on the basis of allegedly tortious conduct committed outside the state and targeted at alleged New York victims under section 302(a)(3). And Section 302(a)(3), which is roughly analogous to the "effects test" in Calder, specifically exempts defamation from its reach.

A.D.2d at 290, 658 N.Y.S.2d at 504; Yanni v. Variety, Inc., 48 A.D.2d 803, 369 N.Y.S.2d 448 (1st Dep't 1975) (finding no jurisdiction over an out-of-state defendant who placed an allegedly defamatory advertisement in a California newspaper); Strelsin, 36 A.D.2d 923, 320 N.Y.S.2d 885.

C.  Website Donations

The final factual basis asserted by BVL for jurisdiction over Walker here is the portion of the Website through which Walker accepts donations.  This feature is the most "interactive" on the Website, which may place it at the "clearly do[ing] business" end of the Zippo spectrum.  Zippo, 952 F. Supp. 2d at 1124.  And particularly if one were to use the Zippo framework, it might constitute doing business in New York.  But here, even if that were enough to render it "transact[ing] any business within the state" under section 302(a)(1), BVL's claim does not "arise from" the Website's acceptance of donations for the purposes of section 302(a)(1).  There is no "articulable nexus, or a substantial relationship," Henderson, 157 F.3d at 123 (internal quotation marks omitted), between the donations and the allegedly defamatory conduct.  See Realuyo, 2003 WL 21537754, at *6, 2003 U.S. Dist. LEXIS 11529, at *16-17; Bassili v. Chu, 242 F. Supp. 2d 223, 229 (W.D.N.Y. 2002).

BVL asserts that the Website's "primary function and business is to publish negative information about companies, including a 20 percent New York base, and the Website's visitors make donations solely because of the overwhelming negative

33

comments and content on the website." Appellant's Br. in Response to Br. by Amicus Curiae at 22-23 (emphasis omitted). But this nexus -- between allegedly tortious conduct and the revenue transactions required to support such conduct -- is so attenuated, the relationship between the quest for funds and the lawsuit for which jurisdiction is sought so insubstantial, that the nexus or relationship cannot alone be a sufficient basis upon which to establish jurisdiction over the defendant for purposes of this case. See Realuyo, 2003 WL 21537754, at *7, 2003 U.S. Dist. LEXIS 11529, at *21 (noting that although the defendant's website's advertising links may have been "interactive," the defamation claim did not arise from such links); Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 297 F. Supp. 2d 1154, 1165 (W.D. Wis. 2004) (explaining that a sale on the website had insufficient nexus to defamation and trademark infringement claims when "[t]he only relationship between the sale and the lawsuit is that the sale occurred through the website"). The donation section of the Website, unrelated to the publication that underlies this lawsuit, therefore does not provide the district court with jurisdiction under section 302(a)(1).

IV. Due Process Analysis

As we have noted, New York law has relied significantly on due process cases in developing its jurisprudence under its long-arm statute. We have therefore discussed them here. But we do so only as a means of understanding New York State long-arm jurisdiction. Nothing in this opinion is intended, or should be

34

read, to indicate our view as to whether jurisdiction in this case would have passed Fourteenth Amendment muster. Neither should anything we have said be interpreted to indicate our position with respect to due process principles recently developed in the internet context by other circuits in decisions such as Revell v. Lidov, 317 F.3d 467 (5th Cir. 2002), and Young v. New Haven Advocate, 315 F.3d 256 (4th Cir. 2002).

V. Jurisdictional Discovery

BVL argues that it is entitled to jurisdictional discovery on the issue of personal jurisdiction. We review for abuse of discretion the district court's decision not to permit jurisdictional discovery because BVL failed to establish a prima facie case of personal jurisdiction. First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 175 (2d Cir. 1998). We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction. See Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998) (finding that the district court did not err in denying jurisdictional discovery where the plaintiffs did not establish a prima facie case that the district court had jurisdiction over the defendant); Lehigh Valley Indus. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975) (similar). We therefore affirm the district court's decision declining to order jurisdictional discovery.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the district court.