OPINION OF THE COURT
Carol Robinson Edmead, J.
In this defamation action by plaintiff Deer Consumer Products, Inc. (Deer), defendant Alfred Little (Little) (appearing pseudonymously) seeks (1) to dismiss the complaint against him pursuant to CPLR 3211 (a) (8) for lack of personal jurisdiction and (2) to appear and/or proceed anonymously.
Factual Background
Deer, a Nevada corporation doing business in Guandong, China, is a publicly traded[1] company which manufactures and sells small home appliances. Deer alleges that Little authored *329 several defamatory reports,[2] published on a Web site operated by Seeking Alfa, Ltd. (SAL),[3] an Israel-based company, as part of an overall scheme to artificially drive down the price of Deer’s common stock in order to profit on short sales.
In support of his motion to dismiss, Little first argues that Deer’s complaint against him should be dismissed for lack of personal jurisdiction because he does not reside or maintain a domicile in New York,[4] has not visited the United States within the last 12 months and did not reside here at the time of the commencement of this action. Further, jurisdiction cannot be based on New York’s long-arm statute since CPLR 302 (a) (2) (tortious acts within the state) and (3) (tortious acts without the state) specifically exempt claims for defamation. Furthermore, he does not “transact business” in New York within the meaning of New York’s long-arm statute, CPLR 302 (a) (1), since posting outside New York of allegedly defamatory material on a Web site which can be accessed in New York, without more, does not subject him, a nondomiciliary, to jurisdiction in this state. The alleged defamatory statements did not take place in New York, were not about a New York resident (Deer), were published by a nondomiciliary company (SAL), and there are no allegations that Little purposefully transacts business in New York, which is “substantially connected” to the alleged defamation.
Further, Little argues that the court should permit him to appear or, if necessary, to proceed anonymously because (1) of the risk of retaliatory physical harm to him and others if his identity *330 is disclosed and (2) he has the First Amendment right to anonymous speech.
As to the first ground, Little asserts that because he had previously publicly exposed corporate and government fraud and corruption in China, and because of the “well-documented abuses of official authority and lack of rule of law [in China], [his] personal safety and well-being would be in serious jeopardy if [his] true identity is disclosed” (Little affidavit 1i 5). Little submits an affidavit with his name redacted, in which he states that he is “personally aware of five incidents [of direct threats or actual physical violence] involving people with whom [he] ha[s] associated in researching certain companies.” Little asserts that one of those associates told him that “the company staff” threatened him and “demanded to disclose the true name of Alfred Little” and struck him in the head with a gun. Further, according to Little, another associate told Little that he was held captive in a hotel room for three hours, while “they” threatened him to disclose the name of the person who hired him to do the research of the company. Thus, argues Little, there exists a real risk of retaliatory physical harm to him and “others” in China, since his personal enemies in China are known to abuse their government connections (Little affidavit 1ÍU 5-7). Little further argues that, at this pleading stage, plaintiff is not prejudiced by nondisclosure of his identity and, at the very least, the court should issue a protective order limiting disclosure of Little’s identity solely to the court, i.e., in camera.
As to his First Amendment right to anonymous speech, Little argues that since Deer cannot show that its defamation claim has merit, the court should grant Little the right to proceed under the fictitious name and at the same time deny Deer’s request to disclose Little’s identity.
Deer opposes the motion, arguing that personal jurisdiction over Little exists based on his residence (CPLR 301), since Little states in the defamation reports at issue in this suit and in his Linkedln Web site profile that he resides in New York and Shanghai (exhibits 1-3, 4 to affirmation of Robert Knuts). Alternatively, the court’s jurisdiction over Little may be based on New York’s long-arm statute, CPLR 302 (a) (1), since Little can be deemed “transacting business” in New York, first, by virtue of maintaining an interactive Web site (blog) www.alfredlittle.com, and second, by entering into a short sale transaction of the shares of Deer, which is a U.S.-listed company, trad *331 ing on NASDAQ (National Association of Securities Dealers Automated Quotations), the headquarters of which are located in New York (exhibits 2, 3, 7 to affirmation of Robert Knuts). Further, there is a requisite “substantial relationship” between Little’s short-selling transaction of Deer shares and his defamatory statements concerning Deer, since Little allegedly published those statements in order to manipulate the public market for Deer common stock and obtain illicit profits on his short sales.[5]
Deer further argues that, if its jurisdictional evidence is insufficient to determine jurisdiction at this time, the court should deny the motion without prejudice to renew following discovery pursuant to CPLR 3211 (d), which permits disclosure of essential jurisdictional facts which are within the exclusive control of the moving party.
Further, Deer argues that the court should deny Little’s request to proceed anonymously and require him to disclose his true name. Little presented no evidence, other than his unsupported self-serving affidavit, of fear of physical harm or retaliation to support his request. Little’s identity is “material and necessary” to the prosecution of Deer’s defamation claim and if the court permits Little to proceed anonymously, Deer would be severely prejudiced in its ability to test Little’s contentions concerning his residence and business activities in New York.
Moreover, argues Deer, this case does not involve claims of a personal or sensitive nature since Little’s use of “the global internet to author and publish the knowingly false information about Deer, [in whose common stock he admittedly held a short position], and therefore, stood to gain financially from wide dissemination of his defamatory statements against Deer” (mem of law in opposition to motion at 13), is alone sufficient to demonstrate a public interest in Little’s identity.
Furthermore, argues Deer, Little cannot use the First Amendment’s protection of anonymous speech as a shield from his tortious acts. The defamation claim against Little has merit since the complaint alleges that Little falsely publicly accused Deer of engaging in a fraudulent land transaction in China, *332 causing Deer to suffer substantial damages. And in any event, Little does not argue that the complaint fails to state a cause of action or dispute the facts therein.
*331 “[a] ‘short sale’ is a transaction by which a person may sell shares of stock that the person does not own, but such a sale is lawful only if the person is able to borrow the same shares of stock by the time that sale is settled. Such a ‘short sale’ is profitable only if the price of the company’s stock drops by an amount greater than the cost of borrowing the stock” (complaint H 11).
*332 In reply, Little argues that his affidavit alone establishes that he is not subject to New York courts’ jurisdiction. The on-line “biographies” of Little, on which Deer relies, are not competent evidence, since they are unsworn and can be “fictionalized” just like his pseudonym; and are inadmissible hearsay as derived from unidentified and uncorroborated sources.
Little denies that there is any indication that he transacts business in New York. Deer’s complaint does not contain allegations with respect to his Web site (blog) www.alfredlittle.com, and in any event, there are no allegations that Little distributed said statements to anyone in New York.
Further, that Little is a short seller of Deer stock listed on the NASDAQ, is no basis to subject him to New York jurisdiction. The NASDAQ is a computerized stock quotation system with which investors can buy and sell stocks on its exchange. There is no evidence or allegation that Little traded Deer stock by contacting a broker in New York or that he owns a brokerage account in New York. And, Little’s alleged transaction of business in New York through his Web site, or by virtue of short selling Deer stock, has no connection to Deer’s defamation claim (based on the reports posted on SAL’s Web site),[6] since Deer failed to show that said claim arose from Little’s alleged stock transaction in New York.
Further, it is apparent that Deer seeks to disseminate Little’s identity. Deer ignores Little’s concern about his and others’ safety and does not offer any assurances of agreeing to maintain Little’s anonymity during the pendency of this motion or preliminary stages of litigation. The lack of details in Little’s motion is motivated by caution not to reveal the identities of those associated with him since disclosure of their names “will lead to him, putting them all in danger” (id. at 11). And, any potential prejudice can be minimized by a protective order.
Discussion
I. Personal Jurisdiction
As the party seeking to assert personal jurisdiction, plaintiff bears the ultimate burden of proof on this issue (see Jacobs v Zurich Ins. Co., 53 AD2d 524 [1st Dept 1976]; Marist Coll. v *333 Brady, 84 AD3d 1322, 1323 [2d Dept 2011]). On a motion to dismiss, however, courts do not require that the plaintiff make a prima facie showing of personal jurisdiction. Rather, to defeat such motion, plaintiff must only demonstrate that facts “may exist” to exercise personal jurisdiction over the defendant (see CPLR 3211 [d]; American BankNote Corp. v Daniele, 45 AD3d 338, 340 [1st Dept 2007]; Ying Jun Chen v Lei Shi, 19 AD3d 407 [2d Dept 2005]). And, to the extent that, in opposition to a motion to dismiss, the plaintiff seeks disclosure on the issue of personal jurisdiction pursuant to CPLR 3211 (d), the plaintiff only needs to set forth a “sufficient start,” and show that its position is not frivolous (Peterson v Spartan Indus., 33 NY2d 463, 467 [1974]; see Shore Pharm. Providers, Inc. v Oakwood Care Ctr., Inc., 65 AD3d 623, 624 [2d Dept 2009]; American BankNote Corp. v Daniele, 45 AD3d 338, 340 [1st Dept 2007] [plaintiffs’ pleadings, affidavits and accompanying documentation made a “sufficient start” to warrant further discovery on the issue of personal jurisdiction]).
A. CPLR 301: Domicile or Presence
CPLR 301 provides that “[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore.” This section codifies a court’s power to exercise a “territorial,” or “presence” jurisdiction over a defendant (see Vincent C. Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 301 [2010]), based on his domicile, on any cause of action regardless of where the claim arose (id.). “ ‘Domicile’ is not necessarily synonymous with ‘residence,’ and one can reside in one place but be domiciled in another. [D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one’s intent to remain there” (Mississippi Band of Choctaw Indians v Holyfield, 490 US 30, 48 [1989] [citations omitted]). Thus, a person can have multiple residences but can have only one domicile (Antone v General Motors Corp., Buick Motor Div., 64 NY2d 20, 30 [1984]).
When the domicile of a party, as here, is in doubt, its determination requires an evaluation of all the circumstances of the case, including “current residence; voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver’s license and automobile registration; payment of taxes ... No single factor is conclu *334 sive” (Wiest v Breslaw, 2002 WL 413925, *3, 2002 US Dist LEXIS 4371, *7 [SD NY 2002], quoting 13B Wright, Miller & Cooper, Federal Practice & Procedure § 3612, at 529-31 [1984] [footnotes omitted]).
The evidence in this case is insufficient for the court to determine, at this time, whether the court can exercise jurisdiction over Little pursuant to CPLR 301 based on his domicile. Little’s personal Web site, www.alfredlittle.com, his Linkedln profile, and the reports published by Little on SAL’s and other Web sites, all state in the “About” (the author) section that “Little now resides in New York and Shanghai” (exhibits 1-4 to affirmation of Robert Knuts). However, Little denies this jurisdictional fact, asserting that he has not resided in New York for the last 12 months. At the same time, Little raises a defense of truth to the defamatory reports he is being sued on, but denies the truth of the statements in the “About” section. Due to such conflicting evidence, whether personal jurisdiction over Little exists pursuant to CPLR 301 cannot be determined on this motion.
Moreover, a holding at this stage that personal jurisdiction is lacking would be premature in light of Deer’s showing that facts essential to justify its opposition to this motion exist but cannot be stated at this time (CPLR 3211 [d]).[7] It is undisputed that Little’s identity is unknown to Deer and that the essence of his alleged New York residency, i.e., his personal contacts with the forum, are within the exclusive control of Little (see Peterson v Spartan Indus., 33 NY2d 463 [1974], supra). Thus, the facts essential for the court’s proper determination of the jurisdictional basis should be determined by discovery (Sony Music Entertainment Inc. v Does 1-40, 326 F Supp 2d 556 [SD NY 2004] [the court has discretion to allow discovery to determine the basis for personal jurisdiction], citing see Volkart Bros., Inc. v M/V Palm Trader, 130 FRD 285, 290 [SD NY 1990]).
Under the circumstances, Deer is entitled to disclosure on the issue of personal jurisdiction (CPLR 3211 [d]), and the portion *335 of Little’s motion to dismiss for lack of jurisdiction under CPLR 301 is denied, without prejudice to renew upon completion of discovery, as outlined below.
*334 “should it appear from affidavits submitted in opposition to a motion made under [CPLR 3211] (a) or (b) that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion [and] order a continuance to permit further affidavits to be obtained or disclosure to be had and may make such other order as may be just.”
*335 B. CPLR 302 (a) (1): Transaction of Business
CPLR 302 (a) (1) provides that a court may exercise personal jurisdiction over a nondomiciliary who, in person or through an agent, “transacts any business” within the state, provided that the cause of action arises out of the transaction of business (Lebel v Tello, 272 AD2d 103 [1st Dept 2000]). Thus, to determine the existence of jurisdiction under section 302 (a) (1), a court must decide (1) whether the defendant “transacts any business” in New York and, if so, (2) whether this cause of action “aris[es] from” such business transaction (see Best Van Lines, Inc. v Walker, 490 F3d 239, 246 [2d Cir 2007], citing Deutsche Bank Sec., Inc. v Montana Bd. of Invs., 7 NY3d 65, 71 [2006]; Kreutter v McFadden Oil Corp., 71 NY2d 460, 467 [1988]).
With respect to the first part of the test, courts look to “the totality of the defendant’s activities within the forum” (Sterling Natl. Bank & Trust Co. of N.Y. v Fidelity Mtge. Invs., 510 F2d 870, 873 [2d Cir 1975]; Deutsche Bank, 7 NY3d 65 [2006]), to determine whether a defendant has transacted business in such a way that it constitutes “purposeful activity,” defined as “some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws” (McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382 [1967], quoting Hanson v Denckla, 357 US 235, 253 [1958]; accord Fischbarg v Doucet, 9 NY3d 375, 380 [2007]).
As for the second part of the test, “[a] suit will be deemed to have arisen out of a party’s activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York” (Henderson v I.N.S., 157 F3d 106, 123 [2d Cir 1998] [internal quotation marks omitted]; Deutsche Bank).
In defamation cases, the New York long-arm statute, as quoted above, has limited applicability because of the courts’ special concern “to avoid unnecessary inhibitions on freedom of speech or the press” (Legros v Irving, 38 AD2d 53, 55 [1st Dept 1971], appeal dismissed 30 NY2d 653 [1972]; accord SPCA of Upstate N.Y., Inc. v American Working Collie Assn., 74 AD3d 1464 [3d Dept 2010]). Thus, for purposes of CPLR 302 (a) (1) jurisdictional analysis, New York courts have held that mere de *336 famatory utterances sent into the state are insufficient to satisfy the “transacting business” requirement (SPCA of Upstate N.Y., Inc. v American Working Collie Assn., 74 AD3d 1464, 1465 [2010], citing Best Van Lines, Inc. v Walker at 248; see Kim v Dvorak, 230 AD2d 286 [3d Dept 1997]; Gary Null & Assoc., Inc. v Phillips, 29 Misc 3d 245, 248 [Sup Ct, NY County 2010] [a nonresident who allegedly posted defamatory statements on his personal Web site about plaintiff from his home computer in Virginia was not subject to long-arm jurisdiction under CPLR 302 (a) (1)]).
In this regard, the Second Circuit observed, “when the defamatory publication itself constitutes the alleged ‘transaction of] business’ for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it” (Best Van Lines, Inc. v Walker, 490 F3d at 248; see Kim v Dvorak, 230 AD2d 286 [1997] [sending of four allegedly defamatory letters to health care professionals in New York did not alone amount to transacting business]).
The same principles have been applied by New York State and federal courts in the context of Internet defamation, which concluded that the posting of allegedly defamatory material outside New York about a New York resident on a Web site merely accessible in New York does not, without more, provide a basis for jurisdiction over a nondomiciliary for the purposes of CPLR 302 (a) (1) (see Gary Null & Assoc., Inc. v Phillips, 29 Misc 3d 245 [2010], citing Best Van Lines, Inc. v Walker, 490 F3d 239 [2007]; SPCA of Upstate N.Y., Inc. v American Working Collie Assn., 74 AD3d 1464 [2010] [defendants were not subject to long-arm jurisdiction in a defamation action based on writings posted on their Web site]; see also Ehrenfeld v Bin Mahfouz, 9 NY3d 501 [2007] [defendant, a Saudi Arabian citizen, did not “transact business” in New York by, inter alia, posting the result of his English libel action against New York plaintiff on his Web site]). Instead, a nonresident’s Internet activity must be expressly targeted at or directed to the forum state to establish minimum contacts necessary to support the exercise of personal jurisdiction (Best Van Lines, supra; see Capitol Records, LLC v VideoEgg, Inc., 611 F Supp 2d 349 [SD NY 2009]; cf. Intellect Art Multimedia, Inc. v Milewski, 24 Misc 3d 1248[A], 2009 NY Slip Op 51912 [U] [Sup Ct, NY County 2009] [holding that plaintiff alleged sufficient facts to show that defendant transacts business in New York through its “Ripoff Report” *337 Web site, given the high level of interactivity of the Web site, the undisputed fact that information is freely exchanged between Web site users, defendant’s alleged active role in manipulating users’ information and data, and defendant’s solicitation of companies and individuals to “resolve” the complaints levied against them on the Ripoff Report]).
In analyzing personal jurisdiction in the Internet context, many New York courts have adopted the sliding scale of interactivity, formulated in Zippo Mfg. Co. v Zippo Dot Com, Inc. (952 F Supp 1119, 1125 1126 [WD Pa 1997]), according to which Web sites are classified as (1) interactive (a defendant provides goods and services over the Internet or knowingly and repeatedly transmits computer files to customers in other states); (2) middle ground (permits the exchange of information between users in another state and the defendant); and (3) passive (makes information available to users) (see also Royalty Network Inc. v Dishant.com, LLC, 638 F Supp 2d 410 [SD NY 2009]). Thus, it has been held that exercising personal jurisdiction over the owner of an Internet Web site accessible in New York required that the site be “interactive” and more than mere presence on the Internet (Citigroup Inc. v City Holding Co., 97 F Supp 2d 549, 565 [SD NY 2000] [analyzing the scale of interactivity]). On the other hand, Web sites, as here, where a user can exchange information with the host computer, occupy a middle ground, and the exercise of jurisdiction in these cases is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site (id.; Best Van Lines at 251). Where the Web site falls somewhere in the “middle ground,” the jurisdictional inquiry requires closer evaluation of its contact with New York residents (Royalty Network Inc. v Dishant.com, LLC, 638 F Supp 2d 410, 419 [2009]).[8]
(1) Interactive Web site
The court holds that Little’s Internet activities do not constitute “transaction of business” in New York within the meaning of section 302 (a) (1).
*338 Regardless of the interactivity level of Little’s Web site (www.alfredlittle.com) or SAL’s Web site (wwrw.seekingalfa.com), there is no indication that Little’s Internet postings on these Web sites, which are merely accessible to anyone — in New York and in the entire world — were expressly targeted at anyone in New York (see Lenahan Law Offs., LLC v Hibbs, 2004 WL 2966926, *6, 2004 US Dist LEXIS 40528, *16-17 [WD NY 2004] [defendant’s Web site permitting the defendant to answer questions posted by users had a low level of interactivity and, thus, was insufficient to support jurisdiction, absent an allegation that defendant projected himself into New York]). Notably, there are no factual allegations, either in the complaint or in the opposition papers, that Little purposefully directed his Web site’s activity at New York. Deer’s assertion in opposition to this motion, that “[defendant Little interacts with his Web site’s users via responses to e-mail, questions and comments, while also allowing users to post comments in reply to Defendant Little’s published articles and contribute their own articles to the website blog,” is insufficient to support a necessary finding that Little purposefully and knowingly interacted with New York residents or otherwise targeted New York for business, “thus invoking the benefits and protections of [New York’s] laws” (McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382 [1967], supra, quoting Hanson v Denckla, 357 US 235, 253 [1958]).
Neither does the nature of Little’s or other users’ postings suggest that they were purposefully directed to New Yorkers rather than a worldwide audience. Indeed, the reports authored by Little provide information about Deer’s alleged fraudulent land transactions in China (complaint ¶¶ 14-27).
Thus, even assuming that Little’s Web site was interactive or fell somewhere in the “middle ground” of interactivity, here, there are no alleged contacts with New York residents which would “require[ ] closer evaluation” (Royalty Network Inc. v Dishant.com, LLC, 638 F Supp 2d 410, 419 [2009], supra). Absent any evidence or specific allegations to be proved through discovery, there is nothing in this record to support a finding that Little purposefully transacted business via his Web site with New York residents. In the context of a section 302 (a) (1) jurisdictional inquiry, such failure is fatal (see Royal Network at 420, citing Freeplay Music, Inc. v Cox Radio, Inc., 2005 WL 1500896, 2005 US Dist LEXIS 12397 [SD NY 2005]; Capitol Records, 611 F Supp 2d at 359 [similar allegations of Web activity *339 insufficient because “it is neither volitional nor distinguishable from (defendant’s) interaction with users located in any other jurisdiction”]).
Moreover, “[although the decision to grant jurisdictional discovery is left to the discretion of the . . . court” (Royalty Network Inc. v Dishant.com, LLC at 425, citing Jazini v Nissan Motor Co., Ltd., 148 F3d 181, 186 [2d Cir 1998]; Marine Midland Bank, N.A. v Miller, 664 F2d 899, 904 [2d Cir 1981]), “to be entitled to discovery, a plaintiff must make a ‘threshold showing that there is some basis for the assertion of jurisdiction’ ” (Royalty Network at 425, quoting Daval Steel Prods., a Div. of Francosteel Corp. v M.V. Juraj Dalmatinac, 718 F Supp 159, 162 [SD NY 1989]). Here, Deer has made no such threshold showing which would warrant further jurisdictional discovery as to Little’s Internet activities.
(2) Short Sale Transaction
Likewise, Deer’s argument that Little’s participation in the short sale transaction of Deer’s shares, which are being traded on NASDAQ, the computerized stock quotation system headquartered in New York,[9] does not support CPLR 302 (a) (1) jurisdiction.
New York courts have consistently held that “a corporation is not ‘doing business’ in the State for purposes of conferring jurisdiction because its shares are listed on a stock exchange” (Gilson v Pittsburgh Forgings Co., 284 F Supp 569, 571 [SD NY 1968]; Robbins v Ring, 9 Misc 2d 44 [Sup Ct, Special Term, NY County 1957] [defendant foreign company was not “doing business” at the time of service simply because its stock was listed on the over-the-counter market; to hold otherwise would render almost every corporation (listing its shares in New York) subject to the jurisdiction of New York, without any other jurisdictional requirements]; see Joseph Walker & Sons v Lehigh Coal & Nav. Co., 8 Misc 2d 1005 [Sup Ct, Special Term, NY County 1957]).
Even assuming that, as Deer argues, as part of the overall scheme to drive down the value of Deer stock, Little “stood to gain financially from wide dissemination of his defamatory statements against Deer” (mem of law in opposition to motion at 13), this nexus between the defamation claim and the short sale transaction would arguably satisfy the second part of the *340 test, i.e., that the cause of action “arises from” the subject transaction. However, absent any indication that Little “projected” himself into New York, e.g., by trading stocks directly with an employee of NASDAQ in New York or dealing directly with a New York broker, this nexus alone is not a sufficient basis upon which to establish jurisdiction over Little for purposes of this action (cf. Deutsche Bank, 7 NY3d 65 [2006], supra [defendant sophisticated institutional trader entered New York to transact business by knowingly initiating and pursuing a negotiation with a Deutsche Bank employee in New York that culminated in the sale of $15 million in bonds]; see also Siegel, NY Prac § 86, at 152 [4th ed] [where a defendant “deals directly with the broker’s New York office by phone or mail (or e-mail) in a number of transactions instead of dealing with the broker at the broker’s local office outside New York, long-arm jurisdiction may be upheld”]).
Accordingly, the court holds that, in the absence of any evidence that Little “purposefully avail [ed] [himself] of the privilege of conducting activities within the forum State” (McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d at 382, quoting Hanson v Denckla, 357 US at 253), neither Little’s Web site nor his short sale of Deer shares constitute “transacting business” in New York as to render Little amenable to jurisdiction within CPLR 302 (a) (1).
Contrary to Deer’s assertions, neither Grimaldi v Guinn (72 AD3d 37 [2d Dept 2010]) nor Citigroup Inc. v City Holding Co. (97 F Supp 2d 549 [2000]) support Deer’s position, because unlike here, those cases do not involve defamation (Grimaldi [breach of an agreement]; Citigroup [trademark infringement]) and, thus, their analyses do not have the same heightened requirements marked by the constitutional overtones triggered by a defamation claim.
Moreover, unlike in both those cases, where nondomiciliary defendants had direct contacts with the plaintiffs in New York by numerous telephone, fax, e-mail and other written communications (Grimaldi), or direct mailings to New York residents directed at soliciting their business (Citigroup), here, as noted above, there is no evidence or even an allegation that Little directed his alleged defamatory statements to anyone in New York.
*341 Therefore, section 302 (a) (1) provides no basis for this court’s jurisdiction over Little.[10]
II. Anonymity
A. Risk of Physical Harm
New York courts have long recognized the openness of the judicial process, which is fundamental to our justice system, and operates to diminish the possibilities for injustice, incompetence, perjury and fraud (Danco Labs. v Chemical Works of Gedeon Richter, 274 AD2d 1 [1st Dept 2000], citing Matter of Brownstone, 191 AD2d 167 [1st Dept 1993]). This openness includes the revelation of the names of the parties (see 6 Wigmore, Evidence, § 1834 et seq. [3d ed 1940]; Doe v Diocese Corp., 43 Conn Supp 152, 647 A2d 1067 [1994]). The use of fictitious names has been noted to run afoul of the public’s common-law right of access to judicial proceedings, a right that is supported by the First Amendment (US Const Amend I; Doe v Del Rio, 241 FRD 154, 157 [SD NY 2006], citing Doe v Deschamps, 64 FRD 652, 653 [D Mont 1974]).
However, this well-recognized presumption of openness can be overridden in exceptional circumstances, in which a court, in its discretion, will permit a party to proceed under a pseudonym, “if the party’s need for anonymity outweighs prejudice to the opposing party and the public’s interest in knowing the party’s identity” (see Does I thru XXIII v Advanced Textile Corp., 214 F3d 1058, 1068 [9th Cir 2000]; see also “J. Doe No. 1” v CBS Broadcasting Inc., 24 AD3d 215, 215 [1st Dept 2005], citing Doe v New York Univ., 6 Misc 3d 866 [Sup Ct, NY County 2004]; Doe v Kidd, 19 Misc 3d 782 [Sup Ct, NY County 2008]).
In evaluating anonymity requests, courts consider, inter alia, “whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; . . . and . . . the risk of unfairness to the opposing [party] from [suppression of defendant’s name]” (Doe v Kidd at 789).
This court’s review of the case law in New York and other jurisdictions revealed that few courts have addressed the narrow issue presented here of whether a civil defendant is entitled to proceed anonymously based on fear of retaliatory physical *342 harm. Rather, the issue of anonymity has generally arisen during the course of litigation when a plaintiff requests anonymity on that ground (Doe v Smith, 105 F Supp 2d 40 [ED NY 1999], citing Doe v Stegall, 653 F2d 180, 186 [5th Cir 1981]), or when plaintiff seeks to preserve privacy in a matter of a sensitive and highly personal nature (Anonymous v Anonymous, 191 Misc 2d 707 [Sup Ct, NY County 2002]; Doe v Del Rio, 241 FRD 154 [2006], supra).
In the cases where it was determined that the need for a party’s anonymity overcame the presumption of openness, the courts granted such requests based on evidentiary proof presented by the requesting party (Doe v Smith, 105 F Supp 2d 40 [1999] [where plaintiff presented particularized and undisputed evidence that proceeding publicly would seriously threaten her mental health, requiring her to choose between dropping her action and placing her life in jeopardy, such evidence of an exceptional circumstance warranted anonymity]; Doe v Stegall, 653 F2d 180 [1981] [plaintiffs the Does (who were children) offered several documentary exhibits, including newspaper articles, to bolster their assertions that they might be subjected to retaliatory harassment or violence if their identities were publicly revealed]).
By contrast, here, Little’s allegations in his affidavit that the disclosure of his name will pose a risk of retaliatory physical harm to him and his “associates,” who have been threatened with physical violence on several occasions, including “a blow to a head with a gun” and “holding captive” (Little affidavit ¶¶ 6-7), are unsupported by any documents or affidavits corroborating these allegations. In the absence of any supporting evidence, the court cannot determine at this juncture whether Little’s asserted fear of retaliatory physical harm is reasonable so as to warrant anonymity.
And while the court does not intend to trivialize Little’s allegations of potential risks of harm to Little (see Little affidavit ¶ 5), in the absence of any evidence substantiating these claims, the court declines to speculate regarding the potential injury the plaintiff might suffer from disclosure of his identity to the court and Deer, or even to the public. Moreover, Deer demonstrated unfairness by showing that it will not be able to carry its burden of proving jurisdiction if Little’s true identity is not revealed, since the essential jurisdictional facts are within the exclusive control of Little.
Nevertheless, until such time as it is determined that Little’s fear of physical retaliation or other harm is reasonable, the *343 disclosure of his identity at this juncture should be solely for the purposes of resolving the jurisdictional issue, as outlined below. In addition, the court directs Little to submit to the court affidavits and other evidence, corroborating his allegations of potential risks of physical harm, to be reviewed in camera.
B. First Amendment
The court holds that the First Amendment does not bar disclosure of Little’s identity.
Included within the panoply of protections provided by the First Amendment is the right of an individual to speak anonymously (see Watchtower Bible & Tract Soc. of N. Y., Inc. v Village of Stratton, 536 US 150, 166 [2002]; Buckley v American Constitutional Law Foundation, Inc., 525 US 182, 199-200 [1999]). The anonymity of speech, however, is not absolute and may be limited by defamation considerations (see Independent Newspapers, Inc. v Brodie, 407 Md 415, 430, 966 A2d 432, 441 [2009], citing Beauharnais v Illinois, 343 US 250, 266 [1952] [“Libelous utterances (are) not. . . within the area of constitutionally protected speech”]).
Moreover, as one court stated, “the release of [false] information, relating to a publicly traded company, through a medium such as the Internet, is no less pernicious than the libelous statements that fall outside the scope of First Amendment protections” (In re Subpoena Duces Tecum to America Online, Inc., 52 Va Cir 26, 35, 2000 WL 1210372, *7, 2000 Va Cir LEXIS 220, *21 [2000], revd on other grounds sub nom. America Online, Inc. v Anonymous Publicly Traded Co., 261 Va 350, 542 SE2d 377 [2001] [court denied a motion to quash a subpoena seeking the identity of certain Doe defendants who had allegedly made defamatory statements and disclosed confidential insider trading information online]).[11]
In determining applications for disclosure of the identities of anonymous Internet speakers, courts therefore perform a *344 balancing test between the interest of the plaintiff in seeking redress for grievances and the First Amendment interest of the speaker in anonymity (Matter of Cohen v Google, Inc., 25 Misc 3d 945, 951-952 [Sup Ct, NY County 2009]; Matter of Greenbaum v Google, Inc., 18 Misc 3d 185 [Sup Ct, NY County 2007]; Dendrite Inti., Inc. v Doe No. 3, 342 NJ Super 134, 775 A2d 756 [2001]). Thus, courts have granted requests for disclosure of the identities of anonymous Internet speakers, where plaintiffs made a prima facie showing of the proposed defamation claim (Matter of Cohen v Google, Inc.; cf. Dendrite Intl., Inc. v Doe No. 3, 342 NJ Super 134, 141-142, 158, 775 A2d 756, 760, 772 [2001] [denying motion for expedited discovery to obtain identity of Internet service provider’s subscriber due to failure to establish prima facie defamation claim]). The elements of defamation are: the publishing of a false statement to a third party; without authorization or privilege; and special harm or defamation per se (Dillon v City of New York, 261 AD2d 34 [1st Dept 1999]).
*343 “[i]n this age of communication in cyberspace, the potential dangers that could flow from the dissemination of such information increase exponentially as the proliferation of shareholder chat rooms continues unabated, and more and more traders utilize the Internet as a means of buying and selling stocks. As such, the wrongful dissemination of such information through the Internet may also fall outside the scope of First Amendment protections” (In re Subpoena Duces Tecum to America Online, Inc., 52 Va Cir at 35, 2000 WL 1210372 at *1, 2000 Va Cir LEXIS 220 at *21).
*344 Here, affording plaintiffs allegations every favorable inference, the court finds that Deer states a prima facie case for defamation against Little. The allegations that Little published on the Web sites false statements of fact that Deer engaged in fraudulent land transactions in China, that Deer’s management misappropriated over $12 million of shareholders’ value (complaint ¶¶ 14-27) and that Deer suffered injury (resulting from a significant drop in the price of its common shares) sufficiently state the elements of a defamation claim (Dillon v City of New York, 261 AD2d 34 [1999]).
Furthermore, Deer has also demonstrated that the knowledge of the true identity of Little is materially necessary for Deer to advance its defamation claim (Sony, supra, citing America Online, 52 Va Cir at 37, 2000 WL 1210372 at *8, 2000 Va Cir LEXIS 220 at *25), as without such identifying information, Deer would not be able to properly carry its burden of proving the existence of personal jurisdiction over Little.
Thus, the First Amendment does not bar disclosure of Little’s identity.
However, in light of his asserted fear of physical harm, as noted above, disclosure of Little’s identifying information should be limited at this juncture solely to the purposes of jurisdictional discovery.
Therefore, to resolve the threshold issue of Little’s personal jurisdiction, which, in turn, cannot be properly assessed without the disclosure of the information about his true identity, the *345 court directs that the parties enter into a confidentiality agreement, as set forth herein.
Conclusion
Based on the foregoing, it is hereby ordered that the branch of the motion of defendant Alfred Little (appearing pseudonymously), pursuant to CPLR 3211 (a) (8), to dismiss plaintiff Deer Consumer Products, Inc.’s complaint for lack of personal jurisdiction, is granted to the extent that CPLR 302 (a) (1), (2), and (3) do not provide a basis for jurisdiction over the defendant Alfred Little, and denied, without prejudice to renew pursuant to CPLR 3211 (d), upon the completion of discovery on the issue of lack of personal jurisdiction based on the defendant’s domicile or presence in New York pursuant to CPLR 301; and it is further ordered that plaintiff Deer Consumer Products, Inc., shall conduct discovery on the issue of personal jurisdiction based on CPLR 301; and it is further ordered that the branch of Alfred Little’s motion for an order permitting him to appear and proceed anonymously is granted solely to the following extent:
1. Prior to the commencement of jurisdictional discovery, the parties are directed to enter into a confidentiality agreement setting forth the following:
(a) The disclosure of the information related to defendant Little’s identity and place of domicile shall be conducted for the limited purpose of discovery on the issue of personal jurisdiction.
(b) The obtained information shall be deemed confidential and shall be used for no purpose other than jurisdictional discovery in this action. With respect to the confidential information, copies shall be furnished to plaintiffs counsel only and shall be designated “CONFIDENTIAL-ATTORNEYS ONLY.”
(c) If, in the course of this proceeding, depositions are conducted that involve this confidential information, the portion of the deposition transcript which reflects inquiries and responses related to this confidential information shall be sealed until such time the court or the parties by mutual agreement deem otherwise.
(d) Any document filed with the court that reveals any such confidential information shall be filed under seal. Documents so labeled shall be kept by the Clerk under seal and shall be made available only to the court or persons authorized by the terms of this order to have access thereto.
*346 (e) The information obtained in the course of jurisdictional discovery shall be disclosed solely to the court, the parties, and the parties’ counsel.
(f) Plaintiff Deer Consumer Products, Inc., and its counsel or its representatives shall not give, share, use, discuss, or otherwise communicate such information in any manner (“disclose”), either directly or indirectly, to any person not authorized to receive the information under the terms of this order.
(g) Nothing in this order shall prevent disclosure as required by governing law, or by any judicial, governmental, or administrative body with jurisdiction over the parties under any law, regulation, or order, provided, however, that the party being required to disclose confidential information shall give five business days prior written notice of such disclosure by e-mail, facsimile and by overnight mail to the other party’s attorneys, unless the judicial, governmental, or administrative body’s law, regulation, or order requires disclosure sooner, in which case the disclosing party shall give such notice by telephone and facsimile as soon as practical, but in any event before any disclosure is made.
2. Defendant Alfred Little is directed to submit to the court affidavits and other evidence, corroborating his allegations of the potential risks of physical harm, for in camera review, within 10 days of entry of this order; and it is further ordered that the parties’ counsel shall appear at Part 35, Room 438, on February 14, 2012, at 2:30 p.m., for an in-court conference for the purpose of scheduling jurisdictional discovery.

. A publicly traded company is a company whose shares of common stock are held by the public and are available for purchase by investors. The shares of publicly traded firms are bought and sold on the organized exchanges or in the over-the-counter market. Such companies are regulated by the U.S. Securities and Exchange Commission (the SEC) (see David L. Scott, American Heritage Dictionary of Business Terms [Houghton Mifflin Harcourt 2009]).

. These reports, published online by www.seekingalpha.com in March 2011, include:
Report 1: A March 9, 2011 report entitled Deer Consumer Products: ‘DEER in the Headlights’ and authored by defendant Little. (See exhibit 1 to affirmation of Robert Knuts.)
Report 2: A March 14, 2011 report also entitled Deer Consumer Products: ‘DEER in the Headlights’ and authored by defendant Little. (See exhibit 2 to the affirmation of Robert Knuts.)
Report 3: A March 18, 2011 report entitled Deer Consumer Products: Was the $22.3 million land use right certificate a forgery ? and authored by defendant Little. (See exhibit 3 to the affirmation of Robert Knuts.)

. This court previously dismissed Deer’s complaint as against defendant SAL (see order dated Aug. 31, 2011) for failure to state a cause of action and based on conclusive documentary evidence.

. The court notes that, pursuant to this court’s order dated May 18, 2011, Deer served process on Little by e-mail at littlealfred96yahoo.com. The order also permitted Deer to serve document subpoenas on Little via e-mail “until such time as plaintiff learns, via such subpoenas or other methods, the true identity of. . . Little and his current address” (see order dated May 18, 2011).

. According to Deer’s complaint,

. See complaint HIT 13, 17, 21-23, 26-27.

. CPLR 3211 (d) provides that

. The court takes note of the Second Circuit’s guidance followed by New York courts that, while the spectrum of interactivity may be useful for analyzing personal jurisdiction under section 302 (a) (1), “it does not amount to a separate framework for analyzing internet-based jurisdiction. Instead, traditional statutory and constitutional principles remain the touchstone of the inquiry” (Best Van Lines, Inc. v Walker, 490 F3d 239, 252 [2007], quoting 2004 WL 964009, *3, 2004 US Dist LEXIS 7830, *9 [SD NY 2004] [internal quotation marks and citation omitted]).

. According to plaintiffs complaint, Deer’s “audited financial statements for the year ended December 31, 2010 were included in [Deer’s] Form 10-K that was filed with the U.S. Securities and Exchange Commission on March 10, 2011 (the ‘2010 Annual Report’)” (complaint ¶ 9).

. While Deer does not assert jurisdiction over Little based on CPLR 302 (a) (2) and (3), it is important to note that CPLR 302 (a) (2) and (3) which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injury within the state, respectively, expressly exempt causes of action for defamation from their scope.

. The court in America Online also noted that