*UPS Supply Chain Solutions, Inc. v. EVA Airways Corporation*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: November 18, 2022
Decided: July 19, 2023

No. 21-2867

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

*Plaintiff,*

*v.*

UPS SUPPLY CHAIN SOLUTIONS, INC.,

*Defendant-Third-Party Plaintiff-Appellant,*

*v.*

EVA AIRWAYS CORPORATION,

*Third-Party Defendant-Appellee,*

DOES 1–10,

*Third-Party Defendants.**

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-2818, Edgardo Ramos, *Judge.*

---

* The Clerk of the Court is respectfully directed to amend the caption accordingly.

Before:  JACOBS, LOHIER, and NATHAN, *Circuit Judge*s.

Appellant UPS Supply Chain Solutions, Inc. was sued in the Southern District of New York and filed a third-party complaint against Appellee EVA Airways Corporation, seeking indemnification and contribution. The district court granted EVA's motion to dismiss for lack of personal jurisdiction. UPS now appeals, arguing that EVA was subject to specific personal jurisdiction based on both New York's long-arm statute and the Montreal Convention. We hold that UPS has failed to allege the in-state injury required for specific jurisdiction in New York, that the Montreal Convention does not confer personal jurisdiction, and that the record does not establish that EVA consented to personal jurisdiction in light of the Convention or its contract with UPS. Accordingly, we **AFFIRM**.

Judge Lohier concurs in a separate opinion.

————

MARK P. ESTRELLA, Countryman & McDaniel, LLP, Los Angeles, CA, *for Appellant*.

CHRISTOPHER CARLSEN, Clyde & Co. US LLP, New York, NY, *for Appellee*.

————

NATHAN, *Circuit Judge*:

The Montreal Convention, a multilateral treaty which entered into force in 2003, governs claims arising out of the international transportation of persons, baggage, and cargo by air.[1] The treaty includes jurisdictional articles providing where such claims can be brought. This appeal presents a question of first

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. No. 13,038.

2

impression: whether the Montreal Convention confers personal jurisdiction. In particular, we must determine whether by enabling actions arising under the treaty to be brought in the courts of certain countries, the Montreal Convention provides those courts with personal jurisdiction over the parties. Consistent with our decisions interpreting the Montreal Convention's predecessor, we conclude that it does not. The Montreal Convention's jurisdictional provisions place a limit on when courts of the United States, as opposed to courts of other signatory nations, may exercise jurisdiction over a claim arising under the treaty. Under U.S. law, this is referred to as treaty jurisdiction, which is a form of subject-matter jurisdiction. The Montreal Convention does not, however, alter our domestic personal jurisdiction requirements, which must be independently established.

Because the Montreal Convention does not confer personal jurisdiction, and because Appellant has not otherwise established a basis for personal jurisdiction over Appellee in this action, we affirm the district court's dismissal for lack of personal jurisdiction.

# BACKGROUND

This case began with the shipment of 24 pallets of vitamins from Chicago to South Korea. National Union Fire Insurance Company of Pittsburgh, PA insured the vitamins, and UPS Supply Chain Solutions, Inc. contracted for them to be carried by EVA Airways Corporation, an airline headquartered in Taiwan. EVA carried the shipment on non-stop flights from Chicago to Taiwan and then from Taiwan to South Korea. The vitamins allegedly arrived damaged, and this litigation ensued.

In April 2020, National Union sued UPS in the Southern District of New York, asserting that UPS breached its duties as a common carrier under the Montreal Convention. UPS did not assert lack of personal jurisdiction as an affirmative defense against National Union's action for damages. Facing a potential adverse judgment, UPS filed a third-party complaint against EVA in January 2021, seeking indemnity and contribution. EVA timely filed an answer in February 2021, in which it asserted lack of personal jurisdiction as an affirmative defense. EVA requested a pre-motion conference on the issue of personal

4

jurisdiction in March 2021, and then moved to dismiss for lack of personal jurisdiction in April 2021. In its opposition to the motion, UPS argued that the district court could assert specific personal jurisdiction over EVA either under New York's long-arm statute, pursuant to the Montreal Convention, or pursuant to a consent theory of personal jurisdiction. In a footnote, UPS suggested that EVA's delay in moving to dismiss may also constitute forfeiture. UPS conceded that the district court in New York lacked general jurisdiction over EVA.

On October 18, 2021, the district court (Ramos, J.) granted EVA's motion to dismiss and terminated EVA as a third-party defendant. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. UPS Supply Chain Sols., Inc.*, No. 20-cv-2818, 2021 WL 4868583 (S.D.N.Y. Oct. 18, 2021). The court reasoned that UPS did not establish jurisdiction under New York's long-arm statute and that the Montreal Convention's jurisdictional provisions relate to subject-matter jurisdiction, not personal jurisdiction. *Id.* at *2–3. The court also rejected UPS's forfeiture argument because EVA promptly raised the issue of personal jurisdiction in its answer and requested a pre-motion conference. *Id.* at *1 n.1.

On November 17, 2021, UPS filed a notice of appeal from the October 18 order, which the district court docketed as a notice of interlocutory appeal. While this appeal was pending, UPS and National Union entered into a settlement agreement. On August 18, 2022, the district court entered a final order dismissing the case pursuant to a joint stipulation between National Union and UPS.

## DISCUSSION

### I. Appellate Jurisdiction

Before deciding whether the district court had personal jurisdiction over EVA, we must address whether we have jurisdiction over this appeal. Following oral argument, we issued an order directing the parties to submit supplemental briefing addressing whether UPS appealed from a final decision of the district court, and if not, whether we could nevertheless exercise appellate jurisdiction. Both UPS and EVA maintain that we have appellate jurisdiction. We agree.

Generally, we may exercise jurisdiction only over appeals from "final decisions of the district courts." 28 U.S.C. § 1291. "An order that adjudicates . . . the rights and liabilities of fewer than all of the remaining parties[] is not a final

6

order unless the court directs the entry of a final judgment as to the dismissed claims or parties 'upon an express determination that there is no just reason for delay.'" *Citizens Accord, Inc. v. Town of Rochester*, 235 F.3d 126, 128 (2d Cir. 2000) (quoting Fed. R. Civ. P. 54(b)). The district court's October 18 order granting EVA's motion to dismiss was not a final order because it did not resolve National Union's claims against UPS and the district court did not direct entry of a final judgment as to EVA under Rule 54(b). Accordingly, UPS's appeal was premature. Nevertheless, the district court's order of dismissal on August 18, 2022, prior to our hearing the appeal, adjudicated the rights of all remaining parties and thereby "cured any jurisdictional infirmity" under 28 U.S.C. § 1291. *Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 171 (2d Cir. 2002).

Still, our jurisdictional inquiry does not end there. Appellants in civil cases must file the requisite notice of appeal "within 30 days *after* entry of the judgment or order appealed from." Fed. R. App. P. 4(a) (emphasis added); *see Siemon v. Emigrant Savings Bank (In re Siemon)*, 421 F.3d 167, 169 (2d Cir. 2005) (observing that Rule 4(a)'s time limit is "mandatory and jurisdictional"). Here, UPS's notice

7

of appeal was filed nine months *before* the final order was entered. However, "a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice . . . even if the final judgment was not itself appealed." *Cmty. Bank, N.A. v. Riffle*, 617 F.3d 171, 174 (2d Cir. 2010) (internal citations omitted). EVA explicitly concedes that it has suffered no prejudice. Therefore, we treat UPS's premature notice of appeal "as if it had been timely filed" after the district court entered final judgment. *Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d at 172.

Having satisfied ourselves of our own jurisdiction to decide this appeal, we turn to whether the district court properly concluded that it lacked personal jurisdiction over EVA.

## II. Personal Jurisdiction

In an appeal from a dismissal for lack of personal jurisdiction, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). UPS bears the

8

burden of demonstrating personal jurisdiction over EVA, though we construe the pleadings and affidavits in the light most favorable to UPS and resolve all doubts in its favor. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010).

UPS claims that the district court could assert personal jurisdiction over EVA based on New York's long-arm statute, the Montreal Convention, EVA's consent in light of the Convention, and EVA's alleged forfeiture of a personal jurisdiction defense. As a threshold matter, UPS's forfeiture argument is without merit. A defendant may "forfeit its objections to personal jurisdiction by failing to raise them timely in the answer or in an initial motion," *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) (citing Fed. R. Civ. P. 12(h)(1)), but here, EVA *did* raise its objections to personal jurisdiction in its answer as is expressly permitted by Fed. R. Civ. P. 12(h)(1). Because the defense was timely made, we address UPS's arguments regarding personal jurisdiction pursuant to New York's long-arm statute, the Montreal Convention, and EVA's consent.

## A. New York's Long-Arm Statute

Specific personal jurisdiction exists in suits "arising out of or related to the defendant's contacts with the forum." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008) (cleaned up). For a federal court to exercise specific jurisdiction, there must be a statutory basis for jurisdiction and the exercise of jurisdiction must comport with constitutional due process requirements. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012). Though many state statutes extend personal jurisdiction to the full extent permitted by the Constitution—thereby merging the statutory and constitutional inquiries—New York's long-arm statute does not reach so far. *Id.* at 60–61.

Section 302(a)(3) of New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(3), which UPS identifies as the statutory basis for specific jurisdiction, is "more stringent than any constitutional requirement." *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997); *see Best Van Lines v. Walker*, 490 F.3d 239, 245 (2d Cir. 2007). Section 302(a)(3) confers jurisdiction over a non-domiciliary when five elements are met:

> (1) The [plaintiff stated a colorable claim that the] defendant committed a tortious act outside the state; (2) the cause of action arose

from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006) (citing *LaMarca v. Pak–Mor Mfg. Co.*, 735 N.E.2d 883, 886 (N.Y. 2000)).

UPS failed to allege the third element under Section 302(a)(3), which requires that the tortious act caused injury to a person or property within New York. The injury underlying this action—the damage to the pallets of vitamins—could not have occurred in New York, given that EVA transported the vitamins from Chicago to South Korea, stopping only in Taiwan. UPS argues that the cargo damage is not the relevant injury because it does not seek compensation for the vitamins; rather, it seeks indemnification and contribution for the damages it paid to National Union, which resulted from this New York-based litigation. In other words, UPS's grievance is that it was sued (and had to pay up) in New York.

UPS's argument is counter to our precedent. For the purposes of Section 302(a)(3), "[t]he situs of the injury is the location of the original event which caused

the injury, not the location where the resultant damages are felt by the plaintiff." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal citation omitted). Here, the "injury" asserted by UPS is the cost of litigating the underlying lawsuit in New York and exposure to a New York court judgment. But "[t]he occurrence of financial consequences in New York . . . is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Id.* (internal citation omitted). In *Whitaker*, we held that an attorney claiming his former client and an out-of-state corporation conspired to deprive him of legal fees could not establish an in-state injury because although the attorney tendered the legal services in New York and felt the economic impact of not receiving payment in New York, the alleged conspiracy occurred out-of-state. *Id.* at 209. Though *Whitaker* was not decided in the context of a third-party complaint, the same principles apply. Indeed, "the location where the resultant damages are felt" is particularly ill-suited to be the situs of injury in the impleader context where, as here, the third-party plaintiff did not raise a personal jurisdiction challenge to the underlying suit. As Judge Buchwald observed in a nearly

identical case, if prospective liability were sufficient to establish in-state injury, then Section 302(a)(3)'s in-state injury requirement "would *always* be satisfied" for third-party defendants in such cases. *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 16-cv-09791, 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018).

Because New York's long-arm statute does not authorize personal jurisdiction over EVA in this action, we need not decide whether exercising such jurisdiction would comport with constitutional due process. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (holding that we proceed to the constitutional prong of the analysis "[i]f, but only if" we conclude that there is a statutory basis for personal jurisdiction).

## B. The Montreal Convention

Next, we must answer whether the Montreal Convention provides a separate basis for exercising personal jurisdiction over EVA in this action. The Montreal Convention sets forth the types of claims that can be brought relating to international air carriage. It is well established that the treaty "preempt[s] state law and provide[s] the sole avenue for damages claims that fall within the scope

13

of [its] provisions." C*ohen v. Am. Airlines, Inc.*, 13 F.4th 240, 246 (2d Cir. 2021). The treaty also includes jurisdictional provisions dictating *where* such claims can be brought. Pointing to these jurisdictional provisions, UPS argues that in enabling certain nation-states' courts to adjudicate a claim arising under the treaty, the Montreal Convention provides those courts with personal jurisdiction over the defendant against whom the claim is brought. By this logic, UPS contends that because the treaty authorizes it to bring a third-party claim against EVA for indemnification and contribution, and because it authorizes courts in the United States to hear that third-party claim, we should interpret the Montreal Convention to establish personal jurisdiction over EVA in this action.

For the reasons explained below, we hold that the Montreal Convention's jurisdictional provisions speak only to treaty jurisdiction as a form of subject-matter jurisdiction, not personal jurisdiction. Therefore, the Montreal Convention does not confer personal jurisdiction on United States courts in actions arising under the treaty. The power to assert jurisdiction over a *claim* is distinct from the power to assert jurisdiction over a *party*, which must be separately established.

14

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellín v. Texas*, 552 U.S. 491, 506 (2008). The Montreal Convention's primary jurisdictional provision, Article 33, provides that "[a]n action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties . . . before the court of" [1] the carrier's domicile, [2] the carrier's principal place of business, [3] the place where the contract was made, [4] the place of destination, or [5] in certain actions, a passenger's principal and permanent residence. Montreal Convention art. 33(1)–(2). Article 33 also dictates that "[q]uestions of procedure shall be governed by the law of the court seised of the case." *Id.* art. 33(4).

Where one carrier (the "contracting carrier") contracted with a party to provide air carriage and a different carrier (the "actual carrier") performed the actual carriage, the Montreal Convention permits either carrier to implead the other in the event that it is sued. *See id.* art. 45 (authorizing "the defendant carrier [to] seek to have the remaining carrier joined in the proceedings according to the procedural requirements of the forum in which the action is brought"). A special

15

jurisdictional provision, Article 46, applies in actions involving carriage arranged by a contracting carrier. Article 46 provides that such actions "must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before a court in which an action may be brought against the contracting carrier, as provided in Article 33, or before the court having jurisdiction at the place where the actual carrier has its domicile or its principal place of business." *Id.* art. 46. In effect, Article 46 expands Article 33's list of fora to encompass both the contracting carrier's and actual carrier's domicile and principal place of business.

An examination of this treaty text leads us to conclude that its jurisdictional provisions pertain to treaty jurisdiction. In the United States, federal courts have subject-matter jurisdiction over claims arising under the Montreal Convention pursuant to 28 U.S.C. § 1331, which gives federal courts subject-matter jurisdiction over "all civil actions arising under . . . treaties of the United States." Articles 33 and 46 operate as a limit on this treaty jurisdiction. By stating where a damages action "must be brought," the provisions delimit which nation-states' courts can hear a claim arising under the treaty. Specifically, the provisions dictate that for

16

the courts of a given nation-state to have jurisdiction over a claim arising under the treaty, the nation-state must be both one of the "States Parties" to the Convention and one of the fora listed in Article 33 (or Article 46, when applicable). Therefore, in a damages action governed by the Montreal Convention, if the United States is *not* one of the designated fora, then courts in the United States cannot exercise treaty jurisdiction over the action.

To begin, nothing in the text of the Montreal Convention says or implies that it gives rise to personal jurisdiction—that is, a court's power to exercise control over a particular party. While Articles 33 and 46 state that actions "*must* be brought" in one of the specified fora, they do not state that the courts of those fora must entertain such actions without regard for other potential barriers to jurisdiction. To the contrary, as noted above, Article 33 specifies that "[q]uestions of procedure shall be governed by the law of the court seised of the case." Montreal Convention art. 33(4). Likewise, while Article 45 allows a defendant contracting carrier to implead an actual carrier, or vice versa, the provision explicitly states that "the procedure and effects" remain "governed by the law of

17

the court seised of the case." *Id.* art. 45. The inclusion of these clauses indicates that while the Montreal Convention permits claims arising under the treaty to be brought in particular nations, it does not guarantee plaintiffs the unconditional right to litigate in those nations' courts. Rather, the treaty expressly leaves room for nation-states to impose their own venue, jurisdictional, or other procedural requirements. We conclude that personal jurisdiction is such a requirement.

Looking beyond the text itself, precedent also supports our conclusion that the Montreal Convention's jurisdictional provisions do not pertain to domestic personal jurisdiction. We interpret the Montreal Convention's provisions "in accordance with case law arising from substantively similar provisions of its predecessor, the Warsaw Convention." *Cohen*, 13 F.4th at 245. That is because although the Montreal Convention—which was drafted in 1999 to replace the Warsaw Convention—improved upon essential aspects of its predecessor, the drafters tried "to retain existing language and substance of other provisions to preserve judicial precedent relating to other aspects of the Warsaw Convention, in order to avoid unnecessary litigation over issues already decided by the courts

18

under the Warsaw Convention and its related protocols." *Id.* at 244 (quoting S. Exec. Rep. No. 108–8, at 3 (2003)). Although our precedent interpreting the Warsaw Convention is not binding, it constitutes strongly persuasive authority in this case because Article 33(1)'s predecessor provision—Article 28 of the Warsaw Convention—is similar to Article 33(1) in both language and substance.[2]

Our cases interpreting Article 28 hold that "[c]ompliance with Article 28(1) gives a nation *treaty jurisdiction* over the claim, so that the nation is an appropriate site for litigation," but "*domestic jurisdiction* and venue questions still may require further analysis." *Campbell v. Air Jam., Ltd.*, 863 F.2d 1, 1 (2d Cir. 1988) (emphases added); *see also Benjamins v. Brit. Eur. Airways*, 572 F.2d 913, 915 (2d Cir. 1978) (same); *Smith v. Canadian Pac. Airways, Ltd.*, 452 F.2d 798, 800 (2d Cir. 1971) (same). In *Smith*, we explained:

> [I]n a Warsaw Convention case there are two levels of judicial power that must be examined to determine whether suit may be maintained.

[2] Article 28 provides: "An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination." Convention for the Unification of Certain Rules Relating to International Transportation by Air art. 28(1), Oct. 12, 1929, 49 Stat. 3000, 3014.

19

> The first level . . . is that of jurisdiction in the international or treaty sense under Article 28(1). The second level involves the power of a particular United States court, under federal statutes and practice, to hear a Warsaw Convention case—jurisdiction in the domestic law sense.

452 F.2d at 800 (footnote omitted). In a footnote expounding on the meaning of "domestic law" jurisdiction, we elaborated that "*in personam* jurisdiction . . . is also an important element of the power of a court to decide a case." *Id.* at 800 n.4.

In reaching this interpretation of Article 28, we principally relied on the text of the Warsaw Convention. Article 28 contained a clause stating that "[q]uestions of *procedure* shall be governed by the law of the court to which the case is submitted," which we read to indicate that Article 28 "leave[s] for domestic decision questions regarding the suitability and location of a particular Warsaw Convention case." *Smith*, 452 F.2d at 801 (quoting Warsaw Convention art. 28(2)). The same analysis applies to Article 33 of the Montreal Convention, which includes a near-identical clause. *See* Montreal Convention art. 33(4).

We also interpreted Article 28 in light of its surrounding provisions. Article 32 of the Warsaw Convention, which prohibited parties from contracting to alter

20

"the rules 'as to jurisdiction,'" underscored "the mandatory nature" of Article 28. *Smith*, 452 F.2d at 801 (quoting Warsaw Convention art. 32). The fact that the treaty prohibited parties from altering its jurisdictional requirements implied that those requirements pertained to something that parties generally lack the power to decide among themselves—namely, subject-matter jurisdiction. Article 49 of the Montreal Convention contains an analogous prohibition on altering jurisdictional rules, which similarly suggests that the new treaty's jurisdictional provisions do not concern a type of jurisdiction, like personal jurisdiction, that parties can waive. *See* Montreal Convention art. 49 (providing that contracts and agreements "altering the rules as to jurisdiction, shall be null and void").

In sum, based on our analysis of the Montreal Convention's text and our Warsaw Convention precedent, we conclude that the Montreal Convention speaks to jurisdiction only in the treaty sense. In cases arising under the Montreal Convention, personal jurisdiction must be separately established in accordance with domestic laws and practice.

## C. Consent

In addition to its primary claim regarding the Montreal Convention, UPS puts forth a related consent-based theory of personal jurisdiction. First, UPS argues that by choosing to do business as an international air carrier governed by the provisions of the Montreal Convention, EVA consented to the personal jurisdiction of any court in which a party properly brings a Montreal claim against EVA. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 100 (2d Cir. 2016) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). However, our conclusion that the Montreal Convention's jurisdictional provisions do not confer personal jurisdiction necessarily defeats this consent-based theory. EVA could not have consented to personal jurisdiction by agreeing to be governed by the treaty's terms because those terms do not themselves concern personal jurisdiction.

Second, we are also unpersuaded to the extent UPS argues that because EVA knew the Convention would govern their contract and UPS would have a right to implead EVA under Article 45, EVA tacitly agreed to suit (and personal jurisdiction) wherever UPS impleads EVA. That consent argument rests on principles of contract law rather than on conferral of jurisdiction by the Montreal Convention. "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). But UPS has not come close to showing a meeting of the minds as to EVA's consent to jurisdiction. Indeed, it hasn't even put a copy of the contract in the record.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

23

LOHIER, *Circuit Judge*, concurring:

I join the Court's opinion in full.  I write separately to emphasize that, while UPS failed to meet its burden of showing a "meeting of the minds" in this case, Majority Op. at 23, our decision does not definitively foreclose a contract-based theory of consent to personal jurisdiction under the Montreal Convention. There may be cases in which the defendant carrier impliedly or expressly consented to personal jurisdiction in, for example, "the court of the domicile of the carrier" or "the court at the place of destination" by doing business as an international air carrier governed by the treaty.  *See* Montreal Convention, art. 33.